WABASH, ST. L. & P. R. Co. *v.* CENTRAL TRUST Co. OF NEW YORK

*(Circuit Court, D. Indiana.* May 9, 1885.)

1. RAILROAD COMPANIES — PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE—
.MATTER OF DEFENSE.
    In actions for injuries caused by negligence, contributory fault is, in the fed-
    eral courts, matter of defense, of which the burden of proof is upon the de-
    fendant, and consequently reasonable presumptions in respect to matters not
    proven or left in doubt should be in favor of the injured party

2. SAME—CONTRIBUTORY NEGLIGENCE DEFEATS ACTION, WHEN.
    Culpable negligence of the complainant, properly so called, which contributed
    to the injury, must always defeat the action; but the nature of the primary
    wrong has much to do with the judgment, whether or not the alleged contrib-
    utory fault was blameworthy. If it was of a negative character, such as lack
    of vigilance, and was itself caused by, or would not have existed, or no injury
    would have resulted from it, but for the primary wrong, it is not in law to be
    charged to the injured one, but to the original wrong-doer.

3. SAME—ACTING ON PRESUMPTION THAT RAILROAD TRAINS WILL BE OPERATED
WITH DUE CARE.
    A party has not an unqualified right to act on the presumption that railroad
    trains and other dangerous agencies will always be operated with the care and
    vigilance required by law or custom; and if he goes upon railroad and high-
    way crossings, or into like dangerous situations, without precautions against
    negligence on the part of those in charge of such agencies, he will himself be
    guilty of negligence.

4. SAME—FINDING NOT SUSTAINED BY EVIDENCE.
    Every case must be determined upon its own circumstances. Finding of the
    master that petitioner was guilty of contributory negligence, and not entitled
    to recover for the injury received, *held* not sustained by the evidence.

Exceptions to Master's Report.    Intervening petition of Thomas
Ingram.

*Jacob B. Julian,* for petitioner.

*Chas. B. Stuart,* for receivers.

WOODS, J.    The master has found against the petitioner on the
ground of contributory negligence, and the question presented is
whether or not the finding is supported by the evidence.    The entire
evidence upon the point, and the master's view of it, are set forth in
the report as follows:

Elijah Ingram testified as follows: "I am petitioner's son, and had charge
of team when mare was injured. It was between 10 and 12 o'clock A. M.
Was hauling gravel for Hanway & Cooper. I was unloading gravel on the
north side of the tracks, on East street. A Wabash train came backing down.
I was not looking for a train. I saw it across the street, and tried to get
horses away, and could not. There was a man walking along at rear of train,
and I told him to stop it, and he gave the signal, but it did not stop until the
rear car struck the mare. I did not hear bell nor whistle." *Cross-examined.*
"I had been hauling there 3 or 4 days or a week, and knew trains were run-
ning on that track. I did not want to drive onto the track, because it was
dangerous; but was told to drive in there by the man who was there in charge
for Hanway & Cooper. My team was facing west, and there was no time for
me to get them out of the way after I saw the train coming. I knew I would
be in that fix if train came. The brakeman who was walking along by the

rear end of the train was walking as fast as the train was coming. From where I was the only way I could get out was to back out. I could not see the engine from where I was. The rear end of train passed the length of a box car past me before it stopped. Nobody told me to get out of the way. None of the wagon wheels were on the track. I was dumping gravel near the north rail of the north track, on the west side of East street. The mare that was injured was probably on the track with her fore feet. I could not drive ahead, because there was a deep gutter. I could not turn around, because the flag-man's station was in the way; and I could not drive ahead or back the team, for the wagon was partly unloaded, and the planks, which had been turned to let the gravel out, prevented my moving the wagon in the condition it was."

Martin Higgins, for defense, testified as follows: "Was working there for Hanway & Cooper, contractors; it was my business to count loads, give tickets to teamsters, and direct them where to dump gravel. I gave this boy a ticket and told him to unload and get out; that a train might be in soon. I crossed over to the south side of the tracks to the office and sat down. Presently I heard somebody holler. I looked, and ran over and helped the boy get wagon out. There was nothing to prevent the boy from getting out by driving across the track. He stood holding the horses and made no effort to get them out. The train was moving very slow. He had plenty of time to drive over the track. I do not know who yelled to the boy. The boy spoke to me and said it was my fault in ordering him to drive on. I said, 'No; you ought to have unloaded and got out.' I told him to go home. The planks of the wagon-bed would not have prevented the team from pulling out." *Cross-examined.* "East street is 60 feet wide. When I heard the noise I looked up and saw the cars. They had not got to the east side of the street yet. I looked at the cars and then at the boy. Did not hear the boy tell brakeman to stop train. I heard shouting, and think it was the flag-man or some one on the train. I did not hear bell or whistle. I expect likely I would have heard signal if it had been given. The boy was holding horses, and they were turned south. Neither horse was on track. May be they had fore feet on track. I was there when the boy came, and it was my duty to direct them where the dumping was to be done. I told the boy to drive in there, and he put gravel where I told him to put it. The boy could have driven across the track with empty wagon. Do not know how it would be if loaded or with ½ load on. If he first saw cars 30 feet away he could not have got out. He was about 5 or 6 feet east of west gutter of East street. From time I saw him holding horses, he could have driven out. Do not know width of west gutter. The horses stood quartering on track; one horse a little bit on track. I do not know whether boy went right to work unloading when I gave him ticket. Boy, from where he was, could see up track as far as I could." *Re-examined.* "If boy had kept a lookout and unloaded, he could have got out. I do not know whether the load was dumped or not. The boy could see 100 feet east of East street from where he stood."

[By request of parties the master accompanied counsel to the place where the animal was injured, and discovered that, from where the boy stood with his team, he could see up the track in the direction from which the train came a distance of over 300 feet.]

Upon this evidence I report and find that the petitioner's claim should be disallowed, for the reason that, in my opinion, the evidence shows that the carelessness and negligence of the petitioner's son, who was in charge of the team, contributed to produce the injury for which damages are claimed.

I find that the receivers' employes were guilty of negligence in failing to give the signals required, but that the defendant's son, with full knowledge of the danger, and after being warned of it just before the injury occurred, placed his team where a moving train would certainly injure it, and never

once looked in the direction from which the train approached until it was so close that he could not get his team away. From where he stood, he could have seen the approaching train, which was not moving faster than a man could walk, at least 300 feet up the track. He says that when he looked up the track the train was less than the width of a street away, and he did not have time to get out.

I am not satisfied that the failure of the teamster, while dumping his load along-side the railroad track, to look in the direction from which the train came, should be deemed to be of such significance as to control the decision of the case. In actions for injuries caused by negligence, contributory fault is, in the federal courts, matter of defense, of which the burden of proof is upon the defendant, (*Railroad Co.* v. *Gladmon,* 15 Wall. 401; *Railroad Co.* v. *Horst,* 93 U. S. 291; *Hough* v. *Railway Co.* 100 U. S. 213;) and consequently reasonable presumptions and inferences in respect to matters not proven or left in doubt should be in favor of the injured party.

Under this rule it may be presumed—as, indeed, on argument it was conceded—that the car by which the injury was done, was not part of a passing train, but was being moved by a switching engine, and was in charge of men presumably familiar with the locality, and, as the work had been in progress for three or four days, doubtless cognizant of the fact that the street was being improved at and near the railroad crossing. With this knowledge, besides the sounding of the locomotive bell, which is required by the city ordinance, they were bound to use all reasonable precautions to prevent injury to those engaged in the work, and this the driver of the petitioner's team had the right to expect, and presumably did expect, of them; but even if no such thought was in his mind, and if in the exercise of greater caution he had been on the lookout, and had seen the car 300 feet or more away, moving slowly behind the walking brakeman, no signal by bell or otherwise being given of a purpose to cross the street, he would have been justified in inferring that a crossing of the street was not intended. The cars were evidently under full control, and might have been easily and promptly stopped; indeed, it is inexplicable why they were not stopped. That they were not, was gross carelessness, amounting, apparently, on the part of the brakeman, to a conscious willingness, if not to a desire, to inflict the injury. If the boy was less vigilant than he might have been, it is reasonably certain that, if proper signals had been given, he would have been aroused in time to have escaped, and would have escaped, all harm. Whatever want of diligence there was, therefore, may well be said to have occurred because of the antecedent fault of those who were moving the cars, and the consequences are attributable to them and to the receiver, rather than to the driver of the team.

It is probably too much to say, in this connection, as in effect it seems to have been said in some cases, that the negligence of the wrong-doer may excuse that of the injured party. Culpable negligence of the complainant, properly so called, which contributed to the

injury, must always defeat the action; but the nature of the primary wrong has much to do with the judgment, whether or not the alleged contributory fault was blameworthy. If it was of a negative character, such as lack of vigilance, and was itself caused by, or would not have existed, or no injury would have resulted from it, but for the primary wrong, it ought not, in reason, and I believe is not, in law, to be charged to the injured one, but rather to the original wrong-doer. This seems to be the meaning of the Indiana supreme court in the case of *Chicago & E. R. Co.* v. *Boggs,* decided February 18, 1885, and supported by the following among other citations: *Railway Co.* v. *Martin,* 82 Ind. 476; *Railway Co.* v. *Yundt,* 78 Ind. 376; *City* v. *Gaston,* 58 Ind. 224; *Beisiegel* v. *Railroad Co.* 34 N. Y. 622; *Owen* v. *Railroad Co.* 35 N. Y. 516; *Ernst* v. *Railroad Co.* 39 N. Y. 61; *Davenport* v. *Ruckman,* 37 N. Y. 568; *Kennayde* v. *Railroad Co.* 45 Mo. 255; *Pennsylvania R. Co.* v. *Ogier,* 35 Pa. St. 71; *French* v. *Taunton B. R. R.* 116 Mass. 537; *Sweeny* v. *Railroad Co.* 10 Allen, 368.

It would not be correct, I think, to say on this subject that citizens have an unqualified right to act upon the presumption that railroad trains and other dangerous agencies will always be operated with the care and vigilance required by law or custom. Experience too often proves the contrary; and ordinarily prudent men will not, and with out negligence do not, go upon railroad and highway crossings, or into like dangerous situations, without precautions against negligence on the part of those in charge of the dangerous agencies. But every case must be determined upon its own circumstances; and for the reasons already indicated I do not think that the injury suffered by the petitioner in this instance is, in the sense of the law, shown to be attributable to the fault of his agent. The damages are shown to have been $85, and for that amount the claim should be allowed.

Ordered accordingly.