JOHN E. FICKETT *vs.* LISBON FALLS FIBRE COMPANY.

Androscoggin.     Opinion January 22, 1898.

*Negligence.   Defective Machinery.   Assuming Risk.   Proximate and Remote Cause.*

In an action brought by the servant against the master, for an injury received while employed in the service of the latter, if the plaintiff knew and appreciated the danger which was the cause of the injury, then he might be held to have voluntarily assumed the risk. But mere notice that there was some danger without appreciating the risk will not of itself preclude the plaintiff from recovering.

Disobedience of a rule, even if such rule is known and understood by the servant, must have contributed to the injury in order to preclude a plaintiff from recovering.

There must be a causal connection between the disobedience of the rule and the injury received.

In this case, the causal relation between the alleged contributory negligence of the plaintiff at the time of the accident in the disobedience of this rule, assuming that he had knowledge of it, and the injury received, was a question of fact submitted to the jury under instructions to which no exceptions have been presented to the court.

This causal connection, and whether such disobedience to the rule contributed to produce the injury, were questions of fact for the jury under appropriate instructions upon all the facts and circumstances of the case.

The contributory negligence of the injured party that will defeat a recovery, must have contributed as a proximate cause of the injury.

If it operated only as a remote cause, or afforded only an opportunity or occasion for the injury, or a mere condition of it, it affords no bar to the plaintiff's action.

ON MOTION BY DEFENDANT.

This was an action of tort in which the plaintiff alleged he was injured by defective machinery while employed by the defendant in its pulp-mill.

The case appears in the opinion.

*H. W. Oakes*, for plaintiff.

*J. W. Symonds, D. W. Snow and C. S. Cook*, for defendant.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, JJ. SAVAGE, J., did not sit.

FOSTER, J. The plaintiff recovered a verdict of $2037.50 for personal injuries received by him while in the defendant's employment. The defendant asks this court, upon motion in the usual form, to set that verdict aside.

The plaintiff's duty was to enter the blow-pits, after the pulp was cooked and blown into these pits from the digesters, and there by means of large hose wash down the pulp. It was in one of these blow-pits that the plaintiff received the injuries of which he complains.

In order to understand just how the plaintiff got hurt, it is necessary to state something of the process by which the pulp is manufactured.

The wood, which is cut into small chips, is placed in large digesters where it is cooked in steam and sulphurous acid from ten to eighteen hours. After being cooked, the pulp is discharged or blown out by means of a valve near the bottom of the digester, through a pipe seven inches in diameter and twenty-two feet in length, known as the blow-pipe, into the blow-pit. The pulp, mixed with hot water and acid, leaves the blow-pipe with great force and strikes an iron plate upon the side of the pit opposite the end of the pipe and is thus broken up and distributed throughout and over all parts of the pit. After being discharged into this the pulp remains until cool, about two hours being required for that purpose. Cold water is thrown upon the pulp as soon as discharged into the pit by means of sprinklers for the purpose of cooling and cleansing it of acid. After it is cooled sufficiently the

pulp is washed by the use of water, from the pit into the stuff chest below where it remains until needed for the next process.

The blow-pit in which the plaintiff was injured was a small room stoutly constructed of planks but large enough to hold two cooks of pulp. There was an entrance door in the side of the pit opening from the room in which the digester was located. Along the inside of the pit was a plank walk, about two feet wide, resting on brackets about four and a half feet from the floor of the pit, upon which the workmen stood while washing the pulp from the pit to the stuff chest. Upon and across this plank walk and about seven feet to the right of the entrance door was the iron blow-pipe. Just beyond the blow-pipe was a lever which was raised for the purpose of letting water into the pit after the pulp had sufficiently cooled, to aid in washing it into the stuff chest.

Upon the morning the plaintiff was injured, a bolt in the valve near the bottom of the digester that furnished the pulp for the pit in question was broken, allowing a portion of the valve to drop on one side a very little, and the effect of this was to permit the escape of steam through the blow-pipe into the blow-pit under a pressure of eighty pounds to the inch, which pressure continued until it was reduced by shutting off the steam from the digester. This injury to the valve also allowed the hot acid to flow into the pit, and as the evidence shows, a pool was formed under the end of the blow-pipe.

The plaintiff claims that, having no knowledge of any injury to the valve, and as was his duty, he entered the blow-pit in order to wash the pulp, and was proceeding along the plank walk to hoist the slide at the other end of it, and that when he reached the end of the blow-pipe he was, by force of the steam escaping from it, blown off into the hot pulp and acid, and thereby received severe scalds and burns upon his legs and arms.

The defense sets up negligence on the part of the plaintiff, and asserts that he went into the pit after standing by the valve, on his way to the pit, and learning that there was trouble with it; that when he went into the pit he disobeyed one of the rules of the defendant company in not shovelling off the pulp from the walk

before commencing his work of washing; and that he walked across the plank into the pulp in the blow-pit, then into the pool of acid, and so received his injuries.

But we do not feel, from a careful examination of all the evidence, that these contentions on the part of the defense are sustained. To be sure, there was more or less conflict in the evidence on these several positions, but we see no reason for saying the jury must have erred in deciding in favor of the plaintiff. From the plaintiff's statement it appears that on that morning he went to the mill about seven o'clock, rung in his registry, inquired what room he should go into and was told to go into No. 3, and then he went back, changed his clothes, took down the door to the blow-pit and went into it to do his work.

The evidence from the superintendent and another witness is that they were standing near the digester looking at the defective valve, when the plaintiff approached, and went into the pit. Without analyzing the testimony of the witnesses, we feel confident that the plaintiff had not, before entering the blow-pit, received such notice of any defect in the valve as would lead him to suppose that there was any unusual danger to be encountered in the blow-pit. He certainly did not appreciate it. The defense strenuously contends that he knew the valve was leaking, and that it was not safe to enter the blow-pit. Had the plaintiff known and appreciated the danger, then he might be held to have voluntarily assumed the risk. But the mere notice that there was some danger without appreciating the risk will not of itself preclude the plaintiff from recovering. *Mundle* v. *Hill Manufacturing Co.*, 86 Maine, 400. It is not claimed that any word of warning was given to the plaintiff by those standing near the defective valve as he came up and passed by into the blow-pit.

It is also urged that in the disobedience of one of the rules of the company by the plaintiff he can not recover. The rule required that the plank-walk inside the blow-pit should be shovelled off, and the defense insists that had the plaintiff observed this rule, and stayed on the walk long enough to shovel it off, he would have avoided all danger. The plaintiff denies ever having any

knowledge of this rule. But disobedience of a rule, even if such rule is known and understood, must have contributed to the injury in order to preclude a plaintiff from recovering. There must be a causal connection between the disobedience of the rule and the injury received. *Ford* v. *Fitchburg Railroad Co.*, 110 Mass. 240; *Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 544, 551. The causal relation between the alleged contributory negligence of the plaintiff at the time of the accident in the disobedience of this rule, even assuming that he had knowledge of it, and the injury received, was a question of fact submitted to the jury under instructions to which no exceptions have been presented to the court.

Assuming that the plaintiff had knowledge of the rule, and that there was a disobedience of it, and that in a certain sense it contributed to produce the accident, still it was a question for the jury, under appropriate instructions upon all the facts and circumstances of the case, whether it contributed to the accident in a legal sense so as to bar the plaintiff's recovery. The contributory negligence of the injured party that will defeat a recovery must have contributed as a proximate cause of the injury. "If it operated as a remote cause, or afforded only an opportunity or occasion for the injury, or a mere condition of it, it is no bar to the plaintiff's action." *Pollard* v. *Maine Central R. R. Co.*, 87 Maine, 51.

With the uncertainty as to whether this rule was ever known to the plaintiff, and whether it had any causal relation between its disobedience, if known, and the injury, we are not inclined to say that the jury have erred in their decision upon this question.

The other point in defense, that the plaintiff walked over the plank-walk into the pulp and pool of acid, and thus received his injuries through his own carelessness, was strongly controverted by the plaintiff, and with this conflicting evidence it became a question of fact peculiarly within the province of the jury to decide; and, as they have determined in favor of the plaintiff, we can not say they erred.

The jury have found that there was negligence on the part of the defendant, either with respect to the nature of the apparatus

or the care of it, or in a failure to give proper warning of danger to the plaintiff which caused his injuries.

It is conceded that on the morning of the injury there was trouble with the valve of No. 3 digester, and that the attention of the general manager was called to its condition. Two bolts had become broken, and this produced a small opening in the valve against which was a pressure of eighty pounds to the square inch, allowing steam and acid to pour through the valve, thence through the twenty-two foot pipe into the blow-pit where the plaintiff was injured.

It is conceded that the plaintiff was burned by this hot acid and steam which was forced through the break into the blow-pit. Had the pit been in its ordinary condition the plaintiff could not have been injured. The plaintiff contends that there was nothing unusual, to all appearances, when he entered the pit. But the defense claims that with the rush of steam through the blow-pipe with sufficient force to blow the plaintiff from the walk, there was sufficient to put him upon his guard, and that this fact is inconsistent with the plaintiff's statement that there was no unusual appearance on entering the pit. But here again the question of contributory negligence was one of pure fact for the jury. The evidence on these controverted points was more or less conflicting. The jury might well believe that the danger which the plaintiff encountered was known to the employer and not to the plaintiff,— that the general manager and vice-principal being present and having knowledge of the defective condition of the valve, owed a duty to the plaintiff of informing him of the danger he was likely to encounter in going into the pit. However this may be, it is evident that the defective condition of the valve was the cause of the plaintiff's injuries. It is not necessary to go into details in relation to the evidence bearing upon the different contentions of the parties. It is sufficient to say that upon the whole evidence we think the verdict ought not to be disturbed.

The damages, while quite large, are not so out of proportion to the injuries received as to require any modification by this court. The injuries received were very severe, rendering the plaintiff a cripple for life.

Upon careful investigation of the whole evidence, notwithstanding the very able and analytical argument of the counsel for the defendant, we feel that the jury were not governed in their decision by any such degree of bias, passion or prejudice as will warrant this court in setting their verdict aside.

*Motion overruled.*