## WARD v. DAMPSKIBSELSKABET KJOEBENHAVEN.

(District Court, E. D. Pennsylvania. March 30, 1905.)

No. 42.

1. SHIPPING—LIABILITY FOR INJURY OF QUARANTINE OFFICER—NEGLIGENCE OF MASTER.

Where a quarantine physician in the performance of his official duties visited a vessel in the night when she was coaling, and her hatches were open, which was an unusual proceeding, it was the duty of the master to see to it that he passed the hatchways in safety while performing his duties, and a mere warning to him that the hatches were open, and to be careful, was not sufficient to relieve the vessel from liability for his death resulting from his falling through an unguarded and unlighted hatchway, or to charge him with contributory negligence when he had no knowledge or appreciation of the extent of the danger or of the exact location of the hatches.

2. CONTRIBUTORY NEGLIGENCE—RULE OF FEDERAL COURTS—BURDEN OF PROOF.

While contributory negligence is a defense in the federal courts, the burden of proof is on the defendant, the presumption being that due care was used.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 221, 229–231.]

In Admiralty. Final hearing.

Alfred Driver and Frank R. Savidge, for libelant.
Convers & Kirlin and J. Parker Kirlin, for respondent.

HOLLAND, District Judge. This is an action brought by the widow of John M. B. Ward, quarantine physician at Marcus Hook, on the Delaware river, against the owner of the steamship Euxinia, to recover damages for personal injuries sustained by the libelant's intestate in falling through a coal bunker hatch on the respondent's steamship on January 21, 1903. The accident resulted in the death of Dr. Ward. At the time of the accident the vessel was in the Dela-

ware river, near the quarantine station at Marcus Hook, and was taking in coal from two tugs alongside. It was about 7 o'clock in the evening when Dr. Ward boarded the Euxinia for the purpose of inspecting her officers and crew in the discharge of his duty as quarantine physician. Upon boarding the vessel the doctor was met at the rail by the master, and proceeded to inspect the crew, who were aft, and upon completing that examination was taken by the arm by the master, who conducted him to the master's cabin, and on their way thereto they passed between the open coal hatch on the port side, where there was a space of five feet wide, and Dr. Ward was on the side of the master farthest from the hatch opening. After performing his duties in the cabin, which occupied about 15 minutes, Dr. Ward, together with the master of the vessel and a Capt. Bellevou, who was superintending the coaling of the vessel, started to return from the cabin aft by the open hatch, and after walking about 12 feet were stopped to permit the workmen to pass a bucket of coal to the hatch. The open hatch was about 40 feet from the master's cabin, 3 feet wide by 5 feet long, and the passageway between it and the rail on the starboard side was 2 feet 5½ inches wide at its narrowest and 2 feet 11½ inches at the widest point. At a point 2 feet 4 inches aft the aft end of the open hatch, a smokestack guy, fastened to the deck near the rail, led off toward the port side at an angle requiring a man either to stoop or move in the direction of the open hatch to pass under it. After stopping to permit the bucket of coal to pass, Capt. Bellevou and the doctor continued their return journey, the master remaining behind. The captain was slightly in the rear of the doctor, and nearer the rail, and had his hand upon the doctor's shoulder. As they neared the hatch, Capt. Bellevou said to him, "Doctor, be careful," he answered, "That is all right." The captain again said, "Doctor, mind the hatch," and he responded, "That's all right, captain." They had proceeded to the aft end of the hatch, when Dr. Ward stepped into the open hatchway, and fell 35 feet to the bottom of the vessel. The hatch coverings had been placed in the passageway over which they traveled, filling the passage nearly to the top of the coaming of the hatch. The master of the vessel had called Dr. Ward's attention to the open hatch as they had passed forward to the cabin on the port side. The night was dark, and somewhat misty. There were no guards about the open hatchway, nor was there any light either under the open hatch, shining out, or above the hatchway, with the rays thrown directly upon the danger spot. Dr. Ward had been upon the vessel before in his official capacity. Coaling at nighttime was an unusual proceeding, and, as to strangers aboard, the open, unguarded, unlighted hatchway unusually dangerous. This state of facts is relied upon by the libelant to sustain the charge that Dr. Ward's death was caused by the negligence of the master, officers, and crew of the steamship Euxinia in not having properly secured or guarded the open hatchway, and in not taking the necessary care and caution to see that accidents could not happen by reason of the uncovered opening, without lights near it, on a dark night, and further to show that the decedent was not guilty of contributory negligence, as a result of which the accident occurred. Dr. Ward had been on this vessel before, but was not thoroughly acquainted with all the details of its construction

and arrangement. He had been told the hatch was open, and no doubt saw it, but under circumstances with no light shining out of the hatch to show him exactly the dimensions and extent of the opening, and only a diffused light above, the rays of which were not especially directed to the opening, and so located as to rather blind the inexperienced more than light them. He was, no doubt, as careful as one could be expected to be who had no accurate information of the danger surrounding him. He had a right to assume that he was being properly directed by the master, who had full and complete knowledge of the dangerous surroundings and situation. It was the duty of the master to see to it that Dr. Ward passed the danger point in safety, and it was not sufficient to warn him of the open hatchway, and tell him to be careful, when the doctor was not informed of the extent of the danger which he was to avoid. He might have been as careful as it was possible for one to be possessing the information he had of the surroundings, and yet fail to realize the extent of the danger confronting him. This information the master possessed, and as Dr. Ward was on board in his official capacity, and required to perform his duties in regard to the inspection of the vessel, and the master saw fit to permit him to proceed while the vessel was coaling in the dark, it was his duty not only to tell him of the dangerous opening, but to see to it that he passed it in the performance of his duty without injury. It is not the case of a workman aboard the vessel, fully cognizant of the dangerous condition of the opening. Dr. Ward was a stranger, and the rule of care on the part of the officers, under the circumstances, required that they should be responsible for his safety, especially when there was an unusually dangerous condition existing aboard, as there was in this case, resulting from the open hatch without a guard or light to distinctly show the outlines of the opening. Experienced seamen assert that the invariable rule should be to place a light under the open hatch, in order that the rays might shine out, and distinctly show the extent of the opening, when coal was being taken on board at nighttime. This seems to me to be a precaution, the omission of which, under the circumstances in this case, indicates an inexcusable want of care. As to the crew and regular gangs of workmen from shore, who are familiar with the location and requirement of hatches, their knowledge of the situation and their continuance at work are held to be conclusive evidence that, as to the particular danger of which they are thus advised, they take the risk; but as to passengers, visitors, or workmen from shore, unaccustomed to the regulation of the ship's internal economy and arrangement, who are invited by the owner, either expressly or by implication, to be upon and to go about the vessel in the vicinity of open hatches, the owners of the vessel are responsible for their safety. The Saratoga, 94 Fed. 221, 36 C. C. A. 208.

Contributory negligence is a defense in a federal court, but the burden of proof is upon the defendant. The presumption that the decedent observed due care is in his favor. Wabash Railroad Co. v. Central Trust Co. (C. C.) 23 Fed. 738. If Dr. Ward knew and appreciated the danger surrounding him, which caused the injury, then he may be held to have voluntarily assumed the risk; but mere notice that there was some danger, without appreciating the extent of it, will not

of itself preclude a plaintiff from recovery. Fickett v. Fibre Co., 91 Me. 268, 39 Atl. 996. To permit Dr. Ward to walk into a dangerous situation, the extent of which could only be guessed at by him, was gross negligence, and the simple warning to "beware of the hatch" cannot relieve the owners from liability, nor fasten upon the decedent the charge of contributory negligence. He could observe the warning only to the extent of his knowledge under the circumstances, and it was the master's business to see to it that he passed the danger safely. Contributory negligence or want of due care is not found in a failure to exercise the best judgment or to use the wisest precaution, but allowance must be made for the extent of information one may possess of the nature of the danger by which he is surrounded, or as to whether he fully realizes, from his limited knowledge, what he shall do to avoid the danger.

Let a decree be drawn in favor of the libelant.