CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY v. JONES.

Opinion delivered January 6, 1906.

1. MASTER AND SERVANT—BASIS OF MASTER'S LIABILITY.—The liability of the master for injuries to servants rests upon the broad principle of law that where there is fault there is liability, but where there is no fault there is no liability. (Page 372.)

2. SAME—WHEN SERVANT MAY RECOVER.—A servant can recover of the master for injuries caused by the negligence of his foreman, who represented the master, unless the servant was guilty of contributory negligence or the injury resulted from a risk assumed by the servant. (Page 372.)

3. SAME—DEFENSES OF ASSUMED RISKS AND CONTRIBUTORY NEGLIGENCE DISTINGUISHED.—The defense of contributory negligence rests on some fault or omission of duty upon the part of the plaintiff, and is maintainable when the plaintiff is asking damages for an injury which would not have happened but for his own carelessness; but the defense of assumed risk rests upon the fact that the servant voluntarily exposed himself to the danger, and thus assumed the risks thereof. (Page 372.)

4. SAME.—Though the defenses of contributory negligence and assumed risk are separate and distinct, yet both may be available in the same case and under the same state of facts. (Page 373.)

5. SAME—RISKS ASSUMED—ORDINARY AND EXTRAORDINARY.—While a servant is held to have knowledge of, and to have assumed, the ordinary risks of the service, whether he has actually informed himself of

them or not, he is not presumed to know of risks caused by the master's negligence not ordinarily incident to the service but due to some altered condition thereof, and will not be held to have assumed them, in the absence of actual knowledge on his part of their existence. (Page 374.)

6.  SAME—WHEN RISKS ASSUMED.—Though a servant may perform work unwillingly under orders from his superior, yet if there was no physical compulsion, and he knew and appreciated the danger thereof, whether it was one of the ordinary risks or not, he will be treated as having elected to bear the risk, and cannot hold the master liable if injury results. (Page 375.)

7.  SAME.—Where a servant was injured by the negligence of a vice-principal, and the evidence tended to show that the servant was busily engaged in work which distracted his attention from the danger to which he was exposed, it was open to the jury to find that he did not assume the risk of injury to which he was exposed by the negligence of the vice-principal. (Page 376.)

8.  SAME—CONTRIBUTORY NEGLIGENCE.—A servant who continues to work in a dangerous place under the immediate supervision of his vice-principal has a right to presume that the latter will not expose him to unnecessary danger, and is not guilty of contributory negligence, unless the danger is so obvious that no prudent man would have incurred it. (Page 377.)

9.  SAME—ASSUMPTION OF RISK.—The mere fact that a servant, exposed while at work to extraordinary peril by the master's negligence, knew of the latter's negligence and continued his work without objection does not establish that the servant assumed the increased risk; it must be shown, not only that the servant was aware of the negligence, but that he also realized the danger to which he was thereby exposed. (Page 378.)

Appeal from Saline Circuit Court; ALEXANDER M. DUFFIE, Judge; affirmed.

### STATEMENT BY THE COURT.

On the 3d of May, 1903, Ebenezer Jones was working for the Choctaw, Oklahoma & Gulf Railroad Company as a member of a bridge gang under a foreman named Collier. On that day Collier and his gang were ordered to assist Tillman, the foreman of another gang, in the erection of a rock crusher on the line of the railway. The wooden structure on which the rock crusher rested was built of heavy sawed timbers. It was located against the side of a steep hill. The top of this wooden structure next to the hill was about even with the hill, while on the opposite front side it was twenty feet high. To lift the heavy iron parts of the rock crusher proper, and place them in position, they used what was called a "traveler," with a crane attachment operated by a

steam engine.   In placing the top of the crusher in position, it became necessary to also use what the witnesses called a "bent." This "bent" consisted of two upright pieces and a cross piece of heavy timbers, nailed together   These two upright pieces or legs of the bent upon which the cross piece rested were nailed to the top of the wooden framework on which the crusher rested, and was further held in an upright position by two braces, one on each leg, one end of the brace being nailed to the wooden structure on which the bent rested, and the other to a leg of the bent.   Jones assisted two or three other men in making and putting up this bent, working under the direction of the foreman, Tillman, who had charge and superintendence of the work.   After the bent had served its purpose, Tillman ordered the workmen to throw it down.   In order to do so, it was necessary to knock the braces loose, and to draw the nails by which the legs of the bent were fastened to the wooden structure upon which it rested. Jones knocked the end of the brace on his side loose from the structure.   He then commenced to draw the nails which fastened the leg.   Collier, the other foreman, suggested that a rope be used to lower the bent gradually, but Tillman, who had charge of the work, said that it was unnecessary, and ordered the workmen to push the bent down.   This was done just about the time Jones finished drawing the nails from the leg of the bent on his side. As the bent was pushed over towards the hill, the upper part of the leg of the bent near which Jones had been working struck the end of a bolt projecting from a part of the traveler.   As the other side of the bent continued to fall, it caused the end of the leg upon which Jones had been working to kick up and back, and it struck Jones and knocked him off of the structure.   He fell upon a car loaded with rock ballast, and from it rolled to the ground below, a distance of twenty feet in all.   His left arm was crushed so badly that it was necessary to amputate it just below the elbow. His right arm was crushed at the wrist, and he suffered other injuries.

He brought an action against the company to recover damages, alleging that the foreman, Tillman, was guilty of negligence in ordering plaintiff and the other workmen to throw the bent down without the use of a rope, and also because he ordered it

24

thrown down without removing both ends of the brace on the side next to plaintiff.

The defendant answered and denied most of the material allegations of the complaint, and also alleged that the injuries received by plaintiff were received as a result of his own carelessness and negligence, or the carelessness and negligence of his fellow-servants, and without the fault of the defendant, and that it was a risk assumed by plaintiff.

On the trial the court, among others, gave the following instruction:

"1.   The court instructs the jury that a person engaged in the services of a railroad company as a bridge carpenter assumes all the risk ordinarily incident to the business, but he does not assume the risk of the negligence of the master himself or of any one to whom the master may see fit to entrust his superintending authority."

The defendant saved its exceptions to the giving of above instruction, and requested the court to modify it by adding the following words: "unless the servant knew of such negligence, or by the use of ordinary care should have known of such negligence, and continued in the employ of the master without objection."

The court refused to make such modification, to which the defendant excepted.

The court gave quite a number of instructions at the request of the defendant, covering the doctrine of contributory negligence and assumed risks, but refused to give the following, towit:

"5.   If the plaintiff was a man of ordinary intelligence and understanding, and of sufficient experience to enable him to see and understand the dangers connected with the work about which he was employed in the manner in which it was conducted, then, he assumed the risks of such dangers, and can not recover for an injury caused thereby.

"6.   The plaintiff alleges that the defendant was negligent in failing to use a rope in throwing down said bent, and also in failing to have a brace removed from said bent before directing it to be thrown down.   If you find from the testimony that plaintiff knew, or, by the exercise of ordinary care and observation on his part, could have known, that a rope was not to be used, and that

said brace had not been removed, and continued at his work, then he assumed the risks occasioned thereby, and cannot recover in this case."

Defendant excepted to the refusal to give the above instructions.

The jury returned a verdict in favor of plaintiff for the sum of four thousand dollars, and judgment was rendered for that sum. Defendant appealed.

*E. B. Peirce* and *Thos. S. Buzbee,* for appellant.

"1. Appellee assumed, and is presumed to have contracted with reference to, all the hazards and risks ordinarily incident to the employment. 35 Ark. 613; 54 Ark. 389; 56 Ark. 232; 48 Ark. 333; 68 Ark. 316; 41 Ark. 549; 58 Ark. 125; 46 Ark. 388; 57 Ark. 76; *Ib.* 503; 58 Ark. 324; 88 S. W. 597; 126 Fed. 485; 68 N. E. 74. See also 72 N. E. 61; 74 Fed. 155.

When the servant has knowledge of the risk to be incurred, he assumes the risk, whether the master personally directs the work or not. 56 Ark. 206. One who, knowing and appreciating the danger, enters upon a perilous work, even though he does so unwillingly and by order of his superior, must bear the risk. 1 Labatt, Master & Servant, § § 438, 443.

*N. P. Richmond* and *Wood & Henderson,* for appellee.

If the master orders the servant to do work under perilous circumstances, the servant may recover for injuries thus incurred, unless the work was obviously so dangerous that a man of ordinary prudence would not have obeyed. 2 Thompson on Neg. § 975; 65 Ark. 138; 47 Atl. 994, 997; 27 Pac. 728; 86 S. W. 508; 19 Am. St. 189; 4 *Ib.* 256; 9 *Ib.* 336; 24 *Ib.* 318; 4 N. E. 700; 34 Minn. 45; 108 Ill. 288; 24 L. R. A. 719; 127 Fed. 609; 12 Fed. 600; 58 Ark. 66; 76 Ark. 184.

RIDDICK, J.. (after stating the facts.) This is an appeal by a railroad company from a judgment against it for damages for an injury to one of its employees while he was acting under the orders of a foreman in charge of the work upon which plaintiff was engaged at the time of his injury. The plaintiff and three or four other workmen were on the top of a wooden structure erected as a support for an iron rock crusher. The heavy iron part of the rock crusher was lifted into position by means of a

"traveler" with a crane attached, worked by a steam engine. In placing the top of the rock crusher in position the workmen had also to use a "bent." This bent consisted of two upright pieces and a cross piece some ten or fifteen feet long, connecting these two uprights, all of heavy timbers securely nailed and fastened together. The bottom of these two uprights or legs of the bent were fastened to the top of the wooden structure, on which the rock crusher rested. After the bent had served its purpose, the foreman ordered it removed. When this order was given, some one suggested that a rope be used, so that it could be lowered gradually. But the foreman said that it was unnecessary to use a rope, and ordered the bent to be pushed over and thrown down. As it was pushed over, the top of the upright or leg of the bent next to where the plaintiff was at work caught on a bolt projecting from the "traveler." As the other side of the bent had nothing to stop or control it, it was pushed or fell forward. The side next to plaintiff, catching on the projecting bolt, caused the bottom of the leg on that side to kick or fly back. It struck plaintiff, knocked him to the ground, and caused him serious injury, on account of which he recovered judgment for damages, and the main question is whether the facts support the judgment.

The liability of the master for injuries to servants rests primarily on the broad principle of law that where there is fault there is liability, but where there is no fault there is no liability. 1 Bevens on Negligence, 734.

In this case we may say that the foreman, having charge of the work for the defendant, stood in its place as its representative, if he by negligence, while acting as foreman, caused the injury, the plaintiff can recover compensation therefor·from the defendant, unless the plaintiff was guilty of contributory negligence, or unless the injury resulted from a risk assumed by plaintiff.

The defendant not only denies that it was guilty of negligence, but it set up both contributory negligence and assumption of the risk by plaintiff as defenses to the action in this case.

There is, of course, a distinction between the defense of assumed risk and that of contributory negligence. The defense of contributory negligence rests on some fault or omission of duty

on the part of the plaintiff, and is maintainable when, though the defendant has been guilty of negligence, yet the direct or proximate cause of the injury is the negligence of the plaintiff but for which the injury would not have happened.   It applies when the plaintiff is asking damages for an injury which would not have happened but for his own carelessness.   On the other hand, the defense of assumed risk is said to rest on contract, which is generally implied from the circumstances of the case; it being a term which the law imports into the contract, when nothing is said to the contrary, that the servant will assume the ordinary risks of the service for which he is paid.   The defense of assumed risk comes within the principle expressed by the maxim, *Volenti non fit injuria*.   This defense does not impliedly admit negligence on the part of the defendant and defeat the right of action therefor, as the defense of contributory negligence does, for where the injury was the result of a risk assumed by the servant, no right of action arises in his favor at all, as the master owes no legal duty to the servant to protect him against dangers the risk of which he assumed as a part of his contract of service. *Narramore* v. *Cleveland R. Co.,* 96 Fed. Rep. 298.     ,

In other words, the defense of assumed risk rests on the fact that the servant voluntarily, or at least without physical coercion, exposed himself to the danger, and thus assumed the risk thereof. Having done this of his own accord, he has no right, if an injury results, to call on another to compensate him therefor, whether he was guilty of carelessness or not.   *Smith* v. *Baker* (1891), Appeal Cases, 325; opinion of Lord Bowen in *Thomas* v. *Quartermaine,* 18 Q. B. Div. 685.

But, though the defenses of contributory negligence and assumed risk are separate and distinct, yet it frequently happens that they are both available in the same case and under the same state of facts.   For instance, as we have stated, a servant assumes all the risks ordinarily incident to the service in which he is employed, and it is also true that he cannot recover for an injury caused by his own negligence.   Now, it may turn out that the injury of which the servant complains was not only due to one of the ordinary risks which the servant assumed, but that it was also caused in part by his own negligence.   In dealing with such a case it is, so far as results are concerned, immaterial whether

it be disposed of by the courts on the ground of assumed risk or contributory negligence, for either of them make out a good defense.   For this reason, the distinction between these two defenses is not always brought out in the reported cases, it being often unnecessary to do so.   We have thought it well to point out the distinction between them in this case, to avoid any confusion of the law in its application to the facts of this case.

In the application of the doctrine of assumption of risks a distinction must be also made between those cases where the injury is due to one of the ordinary risks of the service, and where it is due to some altered condition of the service, caused by the negligence of the master.   The servant is presumed to know the ordinary risks.   It is his duty to inform himself of them; and if he negligently fails to do so, he will still be held to have assumed them.   The decision in the recent case of *Grayson-McLeod Co.* v. *Carter,* 76 Ark. 69, rests on that ground, as do many other cases found in the reports.   But the servant is not presumed to know of risks and dangers caused by the negligence of the master, after he enters the service, which changes the conditions of the service.   If he is injured by such negligence, he can not be said to have assumed the risk, in the absence of knowledge on his part that there was such a danger; for, as we have before stated, the doctrine of assumed risk rests on consent; but if the injury was caused in part by his own negligence, he may be guilty of contributory negligence.   On the other hand, if he realizes the danger, and still elects to go ahead and expose himself to it, then, although he acts with the greatest care, he may, if injured, be held to have assumed the risk.   *Mahoney* v. *Dore,* 155 Mass. 513; *Lloyd* v. *Hanes,* 126 N. C. 357; *Smith* v. *Baker* (1891), Appeal Cases, 325.

Now, the injury in this case did not result from one of the ordinary risks of the employment which a servant of full age and experience must be presumed to have known, whether he did so or not.   But, as the jury found, it was brought about during the course of his service by the negligence of the foreman who had charge of the work, and in that respect represented the defendant. Where the condition of the service is thus altered, and the servant is brought face to face with a danger of that kind not ordinarily incident to the work, then, as before stated, new questions are

presented.   The plea of the master that the servant assumed the risk is met in such a case by the answer that the danger arose from the master's own negligence, which is not one of the risks assumed by the servant.   This being so, the master, to make good his defense of assumed risk, must go further, and show that the servant voluntarily subjected himself to the new danger with full knowledge and appreciation thereof, for such risk constitutes an addition to those ordinarily incident to the service, and there is no presumption that he had knowledge of or assumed it.

This question was thoroughly considered and discussed by the judges of the House of Lords of England in the case of *Smith* v. *Baker* (1891), Appeal Cases 325.   In that case the plaintiff was, with other workmen of defendant, engaged in drilling holes in rock for the purpose of blasting.   Another set of workmen were, by means of a movable crane operated by a steam engine, moving the stones that had been blasted.   These stones were often without notice swung over the heads of plaintiff and those working with him.   He was aware of the danger, but continued at work without protest, and was afterwards injured by a stone dropping upon him.   In discussing the question as to whether the plaintiff assumed the risk by continuing at work under those circumstances, the judges called attention to the fact that the maxim upon which the rule of assumption of risks was based was not *Scienti non fit injuria* but *Volenti non fit injuria*.   In other words, is is not the mere knowledge of danger, but consent to be exposed thereto, that prevents a recovery for a resulting injury.   A majority of them therefore concluded that the mere fact that the servant remained at work after discovering the danger to which he was exposed did not authorize the court to say as a matter of law that he consented to assume the risk. They held that whether he did so or not was under the facts of that case a question for the jury.   The justness of this decision has been recognized by some of the American courts.   *Mahoney* v. *Dore*, 155 Mass. 513; *Lloyd* v. *Hanes*, 126 N. C. 359.

But, though this decision of the highest English court seems to be logically sound, yet the law in this country, as settled by numerous decisions, is to some extent different.   The rule here seems to be that one who, knowing and appreciating the danger, enters upon a perilous work, even though he does so by order of

his superior, must bear the risk.   In other words, even though he may perform the work unwillingly under orders from his superior, yet, if there was no physical compulsion, and if he knew and appreciated the danger thereof, he will in law be treated as having elected to bear the risk, and cannot hold the employer liable if injury results. *Southwestern Telephone Co.* v. *Woughter,* 56 Ark. 206; *Ferren* v. *Old Colony Railroad,* 143 Mass. 197; *Burgess* v. *Davis Sulphur Ore Co.,* 165 Mass. 71; *Stiller* v. *Bohn Mfg. Co.,* 80 Minn. 1; *Mundle* v. *Hill Mfg. Co.,* 86 Me. 400; *Fickett* v. *Fibre Co.,* 91 Me. 268; *Texas & Pacific R. Co.* v. *Swearingen,* 196 U. S. 57; *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64; *Texas & Pacific Ry. Co.* v. *Archibald,* 170 U. S. 665.

But plaintiff in this case exposed himself to the danger in obedience to an order of the foreman. As the danger was brought about by the negligence of the foreman, before it can be said, as a matter of law, that plaintiff assumed the risk thereof by the mere fact that he went ahead with his work, it must be shown that when he did so he knew and appreciated the danger to which he exposed himself by doing the work. But, as plaintiff was busily engaged in work which required his attention, we think it was open for the jury to say that he did not know of or fully appreciate the danger, and that therefore he did not, by continuing at work, assume the risk of injury to which he was exposed by the carelessness of the foreman. Taking into consideration the fact that it would probably have been safe to have pushed the bent over without the use of a rope to control it, but for the fact that there was a nut projecting from the traveler which was liable to catch one side of the bent, that this danger escaped the attention of the foreman whose duty it was to guard against it, that plaintiff's attention was distracted more or less by his work, we think it exceedingly probable that he not only did not assume the risk caused by the act of the foreman in ordering the bent pushed over without a rope attached to control it, but that he was not even aware of the danger until too late to escape. He knew, of course, that the order had been given to push the bent over without the use of a rope, but we think it was open for the jury to find that he did not know and appreciate the danger to him that this order involved, and that therefore he did

not by remaining at work assume the risk.  *Southwestern Telephone Co.* v. *Woughter,* 56 Ark. 211; *Lloyd* v. *Hanes,* 126 N. C. 359; *Mahoney* v. *Dore,* 155 Mass. 513; *Burgess* v. *Davis Sulphur Ore Co.,* 165 Mass. 71; *Mundle* v. *Hill Mfg. Co.,* 86 Me. 400; *Stiller* v. *Bohn Mfg. Co.,* 80 Minn. 1; *Nofsinger* v. *Goldman,* 122 Cal. 609; *Fickett* v. *Fibre Co.,* 91 Me. 268; Shearman & Redfield on Neg., § 214.

The next question is whether or not plaintiff was guilty of contributory negligence.  Now, in this case, as we have before stated, the plaintiff when injured was acting in obedience to an order of the foreman in charge of the work who represented the defendant company.  The order of the foreman to push the bent over carried with it an implied assurance that the act could be done with reasonable safety, for it is the duty of the master or his representative to use due care, and not to order the servant to perform an act that he knew to be unnecessarily dangerous.  The servant has the right to rely upon the judgment of the master unless the danger is so obvious that no prudent man would incur it under like circumstances.  For this reason we do not think that, because the plaintiff and the foreman under whom he was working were both in a position to have discovered the danger that caused this injury, it necessarily follows that if one was negligent both were negligent.  It is true that they were both held to the exercise of ordinary care only; but what is ordinary care may vary with the circumstances and with the duty required, and the duty required of these men and the circumstances under which they acted were different.  The plaintiff was actually engaged in work under the direction of the foreman.  When the bent was ordered pushed over, it became necessary for him to unfasten the brace by which it was held in position, and to draw the nails by which the end of the leg of the brace was fastened to the structure on which it rested.  This required him to look down, instead of upwards.  He completed this work just as the bent began to fall.  Up to that time his attention was necessarily directed to his work.  But the foreman was doing no labor himself.  He was directing the labor of the plaintiff and others.  In order to do this, he was standing on the side of the hill a few yards away from the structure where he could overlook and direct the work.  It was his duty, before ordering the bent thrown down, to ascer-

tain that the execution of his order involved no unnecessary dan-
ger to the men engaged in the work.   When we consider that the
plaintiff had the right to rely upon the performance of this duty
by the foreman, that plaintiff's attention was more or less required
by the work he was doing, it seems very clear, under the facts of
this case, that the jury were justified in finding that the foreman
was guilty of negligence, but that the plaintiff was not.

The objection to the fourth instruction or paragraph of the
charge on the ground that it permitted the jury to make such a
finding must therefore be overruled.

The question of whether plaintiff was guilty of contributory
negligence was, we think, properly submitted, and the finding of
the jury must stand, for it cannot be said, under the facts of this
case, that the danger was so obvious that no prudent man would
have incurred it.   *Southwestern Telephone Co.* v. *Woughter,* 56
Ark. 206; *Sneda* v. *Libera,* 65 Minn. 337.

Counsel for defendant raise several objections to the charge
of the court.   The first instruction is objected to on the ground
that it told the jury that a servant does not assume the risk of
the negligence of the master or of one acting for him.   This is
clearly the law.   The modification of this instruction asked by
defendant was not correct, for the mere fact that the servant
knows of the master's negligence, or could have known of it by the
use of reasonable care, and continued his work without objection,
does not necessarily show that the servant assumed the risk.   As
before stated, to have this effect it must be shown, not only that
the servant was aware of the negligence, but that he also realized
the danger to which he was thereby exposed.

The refusal to give instructions five, six and seven requested
by defendant was not error.   To quote from the brief of counsel
for appellant, these instructions were based on the theory that "if
plaintiff was of sufficient experience to enable him to see and
understand the dangers connected with the work, and if he knew,
or by the exercise of ordinary care and observation could have
known, that a rope was not to be used, and continued at his work
without objection, then he assumed the risk."   These instructions
make the fact of knowledge on the part of the plaintiff that a
rope was not to be used equivalent to knowledge of the increased
danger to which he was thereby subjected.   The servant may have

known that a rope was not to be used, and yet not realized the danger to which he was thereby exposed. Without such realization, there was no reason to hold that he assumed the risk of obeying the order of his foreman.

It would serve no useful purpose to take up each of the instructions given and refused by the court. Sufficient to say that we have given the objections presented by counsel thereto careful consideration, and are of the opinion that no error was committed. The evidence is sufficient to sustain the judgment, and it is therefore affirmed.