[Civ. No. 1506.   Third Appellate District.—June 13, 1916.]

## GEORGE W. TUBBS, Appellant, v. STONE & WEBSTER CONSTRUCTION COMPANY (a Corporation) et al., Respondents.

Negligence—Wheeling of Wheelbarrow on Elevated and Narrow Runway—Departure from Customary Method—Direction of Employer.—A corporation engaged in the construction of a concrete wall as part of a power-house is guilty of negligence in directing a laborer employed by it to wheel a wheelbarrow along a plank runway forty feet above the ground and about four feet wide, and unprotected by any railing, and to return with his wheelbarrow, which was thirty inches wide, in the direction from which he had brought his barrow filled with cement and from which other laborers were approaching, instead of going around to the point of loading as was customarily done.

Id.—Assumption of Risk—Question for Jury.—Under such circumstances the risk the plaintiff incurred in turning back and in trying to pass approaching wheelbarrows was not one of the ordinary risks of the employment, but was a risk caused by the negligence of the master, and before it can be said, as a matter of law, that plaintiff assumed such risk, it must be shown that when he went ahead he knew and appreciated the danger.

Id.—Fall from Runway—Contributory Negligence—Question for Jury.—In an action to recover damages for injuries sustained by such a laborer in falling from the runway while placing his wheelbarrow in an upright position to allow approaching wheelbarrows to pass him, it is for the jury to say whether the plaintiff was guilty of negligence under such circumstances in moving too near to the outer side of the runway.

Id.—Employers' Liability Act—Effect upon Case.—Considering such action with reference to the provisions of the Employers' Liability Act of 1911 (Stats. 1911, p. 796), assumption of risk is no defense, and contributory negligence is a conditional defense dependent upon the comparative negligence of the parties.

APPEAL from a judgment of the Superior Court of Fresno County.   George E. Church, Judge.

The facts are stated in the opinion of the court.

Harris & Hayhurst, and George Cosgrave, for Appellant.

Barnard & Watters, and James Alva Watt, for Respondents.

30 Cal. App.—45

ELLISON, J., *pro tem.*—Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained by him while in the employ of the corporation defendant. At the close of the testimony introduced on behalf of the plaintiff the defendants moved the court for a judgment of nonsuit, which motion was granted. From the judgment that followed this appeal is prosecuted.

The record shows that, in September, 1913, the defendant corporation was engaged in the construction of a concrete wall as part of a power-house in Fresno County, and had in its employ, engaged in said work, a number of men, including the plaintiff. At the time of the accident to the plaintiff the wall had been built up to a height of about forty feet. Below it on the ground level there was a cement floor. Around the inside of the wall was a plank runway four feet wide supported by scaffolding. The runway had no railing or anything else on its side as a protection to those working upon it. It was of rectangular shape. The work of filling the molds with cement in constructing the wall was being done as follows: At one corner of the runway was a hopper into which the cement was placed by means of a hoist that brought it up from the ground. On the runway some eighteen men were working, each with a wheelbarrow. The wheelbarrows were thirty inches wide and weighed seventy-five pounds when empty and two hundred and fifty pounds when loaded with cement. Each man would place his wheelbarrow under the spout of the hopper and it would be filled by pulling a lever and letting the cement run into it. Then it would be moved to the place on the wall where needed and be emptied into the molds or forms, after which it would be pushed in the same direction it had been moving and around the runway until it again came to the hopper. In this work the men with their wheelbarrows formed a continuous procession. The plaintiff was employed to wheel one of these wheelbarrows, and had been at work about one hour and a half when the accident occurred.

The plaintiff testified: "Well, I was wheeling concrete, you know; when we would empty our wheelbarrow we would go around back to the chute and fill up again, and Brown when I brought a wheelbarrow around, he said, 'Turn around and go back, you are losing too much time going on around.' Q. Where was Brown at that time? A. He was right about here.

[Indicating.] Right about opposite to me when he spoke to me. Q. The point you are speaking of is where you were dumping the concrete, I believe? A. Yes, sir. Q. What else did he say to you? A. I don't know exactly what he said; he said, 'Turn around and go back, you are losing too damn much time going around this way.' Q. What did you do then? A. I just sat down my wheelbarrow and started back with it. Q. Had you already emptied your wheelbarrow at that time? A. Yes, sir; I had just emptied my wheelbarrow when he told me to go around, turn around and go back. When I started back I saw another wheelbarrow coming from the dumper here, and so I knew I couldn't pass him, you know; so I pulled my wheelbarrow around and straightened up to allow him room to pass, and I don't know what happened after that; I was struck, and I went down, and I don't know just exactly— Q. How far down did you go? A. I should judge about thirty-five or forty feet. Q. Did you strike on the way down? A. I must have. I was cut up underneath the jaw, and the whole side of my face was cut up, and this leg was broken. Q. Which leg broken? A. Left one, halfway to the knee. Q. Mr. Tubbs, at the time that you turned back, do you know whether the runway there was wide enough so that another wheelbarrow could pass you? A. I thought it was wide enough by the other man being careful, because there was room enough if he had been careful. Q. Had you been wheeling before that time, using a wheelbarrow on this runway? A. Not on that runway; no, sir.'' On cross-examination he testified: ''Q. Was there any man following you with a load? A. Well, yes, there was another man following me; but I didn't know he was following me. Q. You didn't know he was following you? A. No, until I turned around and Brown told me to start back and I took my wheelbarrow like this [indicating] and started back, and as I started back I saw this other fellow coming; and I thought after I pulled my wheelbarrow up like that [indicating] there would be room for him to pass, and there would have been room if he had been careful. I don't know exactly but I was about fifteen feet from the loading point. Q. In starting back how many steps had you taken before you fell? A. I took two or three steps, I believe, as near as I can say. Q. How near did you approach the man coming in the opposite direction? A. I don't know

exactly how near I was to him. I see him coming and I pulled up that way just to allow him room to pass. There would have been room enough if he had been careful. Q. You said this morning in answer to your counsel that you knew you couldn't pass him, did you not? A. I was going along with the wheelbarrow that way [indicating]. I knew I could not have done it that way [indicating]. I pulled up the wheelbarrow to allow him to pass. Q. You knew you couldn't pass him on that narrow walk, did you? A. Yes, sir. Q. The two wheelbarrows were wider than the walk, were they not? A. Yes, sir. Q. You saw it was dangerous, didn't you? A. Yes, sir. Q. And you knew that it was dangerous, did you not? A. Well, it wouldn't have been dangerous if he had been careful. Q. How close would you have to stand to the edge in order to allow him to pass with a loaded wheelbarrow? A. I would have to stand right on the edge. Q. And you say that there was a sheer fall there of forty feet or thereabouts? A. Yes, sir. Q. But you knew it was there? A. Yes, sir. Q. How near did you approach him before you fell? A. Oh, about—I don't know; about eight or nine feet, maybe ten. I don't know how far I saw him coming and I knew I could not pass him. Q. He was still eight or nine feet from you when you fell? A. Yes, sir.''

The defendants' motion for a nonsuit was made upon the grounds: 1. That the evidence failed to prove the negligence alleged in the complaint; 2. That the evidence shows without conflict that the accident occurred by reason of the plaintiff's negligence in ''voluntarily, carelessly, and negligently and unnecessarily approaching too near to the outer side of the runway; 3. That the danger of drawing to one side of the runway and attempting to permit another person to pass with a loaded wheelbarrow in the position he was, and the danger of his attempting to return toward the point of loading in the same direction in which he had come was so obvious and so apparent that to do so was to assume the risk of the accident occurring necessarily involved; that the danger of falling by attempting to draw near to the side of the runway with his wheelbarrow to permit another to pass with a loaded wheelbarrow was obviously so dangerous that any person in possession of his faculties could not be justified in doing so, even at the command of his employer. ''We rely

in this motion upon the testimony of the plaintiff himself
and upon the law as declared by the supreme court in the
case of *Hall* v. *Clark,* 163 Cal. 392, [125 Pac. 1047].''

Upon the first ground of the motion little need be said.
That the defendant corporation owed a duty to the plaintiff,
not to order him to return with his wheelbarrow in the di-
rection from which others with loaded wheelbarrows were
approaching upon a narrow runway forty feet high, unpro-
tected by a railing, is too obvious to need discussion.   We
do not understand that the defendant seriously contends that
defendant was not guilty of negligence in giving to the plain-
tiff the order it did.

The statements, contained in the motion, of conduct of the
plaintiff claimed to justify a nonsuit were twofold: 1. That
he was guilty of contributory negligence causing the accident;
and, 2. That he assumed the risks involved in trying to obey
the orders he had received.   These two defenses, while often
considered together without much attempt to distinguish
them, involve different rules and principles, and, while both
may and often do coexist in the same case, yet they are
not the same.   A person may undertake to do a very danger-
ous thing and yet do it in a very careful manner.   The dif-
ference between the two defenses is very clearly stated in
the case of *Choctaw etc. R. R. Co.* v. *Jones,* 77 Ark. 367,
[7 Ann. Cas. 430, 4 L. R. A. (N. S.) 837, 92 S. W. 244],
from which we make the following excerpts: ''The defense
of contributory negligence rests on some fault or omission
of duty on the part of the plaintiff, and is maintainable
even though the defendant has been guilty of negligence.
It applies when the defendant is asking damages for an in-
jury which would not have happened but for his own care-
lessness.   On the other hand, the defense of assumed risk
is said to rest on contract, which is generally implied from
the circumstances of the case; it being a term which the law
imports into the contract, when nothing is said to the con-
trary, that the servant will assume the ordinary risks of the
service for which he is paid.   In other words, the defense of
assumed risk rests on the fact that the servant voluntarily, or
at least without physical coercion, exposed himself to the
danger, and thus assumed the risk thereof.   Having done this
of his own accord, he has no right, if an injury results, to
call on another to compensate him therefor, whether he

was guilty of carelessness or not. In the application of the doctrine of assumption of risks a distinction must be also made between those cases where the injury is due to one of the ordinary risks of the service, and when it is due to some altered condition of the service, caused by the negligence of the master. The servant is presumed to know the ordinary risks. It is his duty to inform himself of them, and, if he negligently fails· to do so, he will still be held to have assumed them. But the servant is not presumed to know of risks and dangers caused by negligence of the master after he enters the service, which change the conditions of the service. If he is injured by such negligence he cannot be said to have assumed the risk, in the absence of knowledge on his part that there was such a danger. Where the condition of the service is thus altered, and the servant is brought face to face with a danger of that kind not ordinarily incident to the work, then, as before stated, new questions are presented. The plea of the master that the servant assumed the risk is met in such a case by the answer that the danger arose from the master's own negligence, which is not one of the risks assumed by the servant. This being so, the master, to make good his defense of assumed risk, must go further and show that the servant voluntarily subjected himself to the new danger with full knowledge and appreciation thereof; for such risk constitutes an addition to those ordinarily incident to the service, and there is no presumption that he had knowledge of it, or assumed it. But plaintiff in this case exposed himself to the danger in obedience to an order of the foreman. As the danger was brought about by the negligence of the foreman, before it can be said, as a matter of law, that plaintiff assumed the risk thereof by the mere fact that he went ahead with his work, it must be clearly shown that when he did so he knew and appreciated the danger to which he exposed himself by doing the work.''

Considering the alleged contributory negligence of the plaintiff as distinguished from assumption of risk: He had been ordered to turn back with his wheelbarrow on the plank runway and obeyed. After he had turned and started back he noticed another wheelbarrow coming toward him and discovered for the first time that the two could not pass if both were rolled along in the·ordinary manner. He was thus confronted with a new and unexpected situation and danger.

Thinking quickly and without much time for deliberation, he decided that by stepping toward the edge of the runway and placing his wheelbarrow in an upright position, the other could pass him with safety. He accordingly adopted this course of action and, either by being struck by the wheel-barrow or by losing his balance (the record is not clear as to which), he fell and was injured. Whether under the circumstances it was negligence for him to move to the edge to let the other wheelbarrow pass and whether in doing so he acted carelessly were questions that the jury should have been permitted to pass upon. The evidence and all the attending circumstances, with all the inferences that might be drawn therefrom, did not present such a case as to make his negligence a pure question of law. He was only required to do what was reasonable under existing circumstances. The case was undoubtedly one where the reasonableness of the effort to escape injury after the discovery of the danger was a question for the jury to be determined by them in view of all the circumstances shown by the evidence.

"If the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice under this disturbing influence, although if his mind had been clear, he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault, and of such case it is said: 'Even if, in bewilderment, he runs directly into the danger which he fears, he is not at fault. The confusion of mind, caused by such negligence, is part of the injury inflicted by the negligent person.'" (*Antonian* v. *Southern Pac. Co.,* 9 Cal. App. 728, [100 Pac. 882].)

As to assumption of risk: The risk he incurred in turning back and trying to pass another wheelbarrow was not one of the ordinary risks of his employment, but, in the language of the decision quoted from, it was a "risk caused by the negligence of the master after he entered the service and which changed the condition of the service," and, as said in the same case, "as the danger was brought about by the negligence of the foreman, before it can be said, as a matter of law, that plaintiff assumed the risk thereof by the mere fact that he went ahead with his work, it must be clearly

shown that when he did so he knew and appreciated the danger to which he exposed himself by doing the work."

We think the plaintiff's evidence does not make it clearly appear that when he entered upon the performance of the new order, given him by the foreman, he knew and appreciated the danger involved in obedience. His testimony is fairly susceptible of the construction that not until he had started back with his wheelbarrow and not until he saw the other wheelbarrow approaching him did he know or realize that the two wheelbarrows could not be wheeled by each other with safety. Up to this point, then, he had not assumed the risk incident to changed conditions of his work. Not knowing at that time that the two wheelbarrows could not pass, he did not "know and appreciate the danger of obeying the order he had received."

"The servant's dependent and inferior position is to be taken into consideration; and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed." (Shearman & Redfield on Negligence, 6th ed., sec. 207h.) "When ordered into a place of danger the servant will not be chargeable with having assumed the risk, unless so glaring that no prudent man would have encountered it, if he acts with reasonable prudence in its execution." (Shearman & Redfield on Negligence, 6th ed., sec. 207h, notes.) "But the present case comes under the limitations to that doctrine to the effect that 'if the danger is not so absolute, or imminent, that injury must almost necessarily result from obedience to the order, and the servant obeys the order and is injured, the master will not be allowed to defend, on the ground that the servant ought not to have obeyed the order." (*Choctaw etc. R. R. Co.* v. *Jones,* 4 L. R. A. (N. S.) 858, note.)

The conclusions we have reached on this branch of the case are not at all in conflict with the decision in *Hall* v. *Clark,* 163 Cal. 392, [125 Pac. 1047], but are in harmony with it. The two cases are readily differentiated. In that case the plaintiff could know and appreciate the dangers incident to obeying the order as soon as it was made. The situation was visible, apparent, and known. In this case the danger was not known or appreciated until the risk had been well

entered upon.  In that case the plaintiff, wtih full knowledge of all the facts, did a manifestly dangerous act.  In this case the plaintiff, after being placed in a dangerous position, before he knew it was dangerous, moved to one side to let the other man pass, believing it was a safe thing to do if the other man was careful, as he testifies, and we are not prepared to say that a jury would or ought to have found that the act was one no ordinarily prudent man would have attempted under the circumstances.

Thus far the case has been considered without reference to the provisions of the act of 1911 (Stats. 1911, p. 796), known as the Employers' Liability Act.  That act deals with both contributory negligence and assumption of risk as defenses to actions of this kind but gives a different effect to each. Contributory negligence by that act is made a conditional defense.  Assumption of the risk of the hazard is denied all efficacy as a defense.  Under that act contributory negligence does not bar a recovery where it is slight and that of the employer is gross in comparison, but the damages may be diminished by reason of such contributory negligence.

So in this case, if the jury had found that the plaintiff was negligent in trying to pass the wheelbarrow in the manner he did, they could not then have given a verdict in favor of the defendant for that reason, unless they also found that his negligence was more than slight as compared to the negligence of the defendant.  A case might arise when great negligence on the part of a plaintiff would be considered slight when compared with the negligence of the defendant. So, even if, in this case, the plaintiff was guilty of negligence contributory to the injury, still it was for the jury to compare it with the negligence of the defendant, and, if found to be slight in comparison, give a verdict for him with a reduction of amount on account thereof, but not give a verdict for the defendant unless the plaintiff's negligence was found to be more than slight in comparison with the defendant's negligence.

The plaintiff testified that to permit the other man to pass him would not be dangerous if the other was careful.  If the jury believed this statement, they would have been justified under the circumstances in finding that the plaintiff was not guilty of negligence, or, if he was, that it was only slight as compared with defendant's.

The Employers' Liability Act provides: "It shall not be a defense (1) That the employee either expressly or impliedly assumed the risk of the hazard complained of." This would seem to dispose of the claim that plaintiff cannot recover because he assumed the risk of the hazard. It is to be noted that this act was not in force when the cause of action arose in *Hall* v. *Clark*, 163 Cal. 392, [125 Pac. 1047], and in the decision that feature is incidentally referred to. (See p. 395.) The act does not use the expression "risk of the employment," but "risk of the hazard complained of," and this is broad enough to include both the ordinary and extraordinary risks of an employment.

"But even if it be said that the station as used by Crabbe was in an unsafe condition and that he knew it, this amounts to no more than a declaration that Crabbe assumed the risk of a known hazard. But this fact, by the very terms of the Employers' Liability Act, no longer affords the employer a defense." (*Crabbe* v. *Mammoth etc. Co.*, 168 Cal. 500, [143 Pac. 714].)

Our conclusion is that the jury should have been permitted to pass upon the case.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 10, 1916.