# BRINKLEY CAR WORKS & MANUFACTURING COMPANY *v.* LEWIS.

## Opinion delivered June 23, 1900.

MASTER AND SERVANT—RISKS OF EMPLOYMENT.—A servant who knowingly consented to work in a place of danger will be held to have assumed the attendant risk.  (Page 319.)

Appeal from Monroe Circuit Court.

JAS. S. THOMAS, Judge.

### STATEMENT BY THE COURT.

This is an action to recover damages for personal injuries sustained by appellee while in employ of appellant.  It is alleged in the complaint that, for about five years prior to time of injury (November 27, 1897), plaintiff (appellee) had been working around the mill and lumber yard of defendant (appellant), which is a corporation engaged in the manufacture of lumber on an extensive scale; that it was plaintiff's duty to

push loaded cars from the mill, on tracks, to various parts of the yard; that defendant had carelessly piled green lumber too near the track on which plaintiff's car was operated, which green lumber, on said 27th day of November, 1897, fell on plaintiff and greatly injured him; that defendant had failed to furnish plaintiff a safe place in which to labor, or safe appliances to work with; that plaintiff was damaged by the injury, in the sum of $10,000, for which sum he brought suit.

Defendant denied the material allegations of the complaint, and alleged that, if plaintiff was injured at the time mentioned, the injury resulted from the negligence of plaintiff and his fellow workmen.

On May 3, 1898, the case was tried, and plaintiff recovered judgment for $125. Motion for new trial was filed May 4th. Motion was overruled, and defendant excepted. In due time defendant filed its bill of exceptions, and appealed to this court. The evidence, in full, on the part of the plaintiff, is as follows:

Isom Humphrey testified as follows: "I know the plaintiff. I was working at the mill of defendant, at the time plaintiff received the injury. I was distributing lumber, and plaintiff was running the push car. My place of working was about seventy-five or one hundred yards from where plaintiff was hurt, but I could see the pile that fell from where I was working. When a car was hard to push, myself and others would be called upon to assist in pushing it out. When the lumber fell, I was right in front of plaintiff,—about ten feet from him. The lumber struck me and Lewis [plaintiff], and Lewis laid there until we got the lumber off of him. The pile of lumber was green, and was 1 inch thick, 12 inches wide, and 16 feet long. It was near the track, and the lumber on the car struck it, which caused it to fall. The lumber which fell was piled by Toney James and Tom Thornton, and a part of it was piled the day before it fell. The duty of James and Thornton was to load lumber on the flat cars for shipping, but they would sometimes *help plaintiff to push out the car.*"

Tom Hicks: "I have been working for defendant for four or five years. I loaded the lumber from the saw to the car,

which was then taken by the plaintiff, Lewis, and others out into the yard. Sometimes Toney James and Tom Thornton would assist in pushing out the car. They piled most of the lumber which fell and caused plaintiff's injury. *The plaintiff would often assist in piling the lumber.* Do not know whether he assisted in piling the lumber which fell or not. Aquella Polk worked with plaintiff. I piled a part of the lumber which fell, and if I had piled all of it, I do not think it would have fallen. When there was no lumber to take from the saw to the car, I would be required to do any other work to be done."

G. R. Lewis, the plaintiff: "I am the plaintiff in this case. I am 40 years old, and am married. I had been in the employ of defendant, prior to November 27, 1887, about four or five years. On November 27, 1897, while myself and Aquella Polk and some others were pushing a loaded car along the track to the yard, a large pile of green lumber, 16 feet long, fell on me and broke my leg. Dr. Sumpter was called in to attend to me, and I saw a bone about four inches long which he took out of my leg. I was confined to my bed for about four months, and am not now able to work or to get around without the aid of crutches, and my leg pains me greatly. .. have worked in lumber business a great deal, and know the difference between piling and stacking it. To pile it means to lay it down, one plank on another, with no sticks between the layers, and lumber piled in this way is liable to tumble down. To stack lumber is to put sticks between the layers, and to turn the end of the lumber toward the track on which the car runs. The piled lumber is generally put off lengthways along the side of the track. The lumber which fell on me was piled several days before it fell, and was piled lengthways by the side of the track, by Toney James and Thomas Thornton. It was not taken from the push car, but was taken from the rollers, and piled there to go through the planer. At least, it was in the place that lumber is put for the planer. It was very near the track, not more than twelve or eighteen inches from it, and about five feet high. I had passed by it every time I pushed out a car. I never assisted in piling it, and do not think my partner, Aquella Polk, did. It was not my duty to pile or

stack lumber. It was piled too near the track, and piled so close to the track that the lumber on the car struck it, and it fell and hurt me, as stated.

*C. F. Greenlee,* for appellant.

The plaintiff assumed the ordinary risks of his employment, and cannot recover. 57 Ark. 76, 78.

*H. A. & J. R. Parker,* for appellee.

Appellant's negligence caused the injury, and it is liable therefor. 58 Ark. 76. It is the duty of the master to keep a safe place for his servants to work in. 48 Ark, 333; 54 Ark. 289, 297. The doctrine of fellow servants has no application, nor can it be said that plaintiff was intentionally injured. 18 S. W. 178; 66 Pa. St. 199; 57 Pa. St. 380; 78 Mo. 212.

HUGHES, J., (after stating the facts.) In the opinion of a majority of the court, the appellee assumed the risks incident to his employment, and was not entitled to a recovery in this case. We think this case comes within the principles heretofore announced by this court in similar cases.

In *Emma Cottonseed Oil Co.* v. *Hale,* 56 Ark. 237, it is said by Judge Battle, in delivering the opinion of the court, that "it is well settled that when one enters the service of another he takes upon himself the ordinary risks of the employment in which he engages. On the other hand, the employer takes upon himself an implied obligation to provide the person employed with suitable instruments and means with which to do his work, and to provide a suitable place in which such person, when exercising due care himself, can perform his duty safely, and without exposure to dangers that do not come within the obvious scope of his employment. But the servant can dispense with this obligation. If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart to him by the master, and does so, he thereby assumes the risks incident thereto, and dispenses with the obligation of the master to furnish him with a better place. It is then no longer a question whether such place could not with reasonable care and diligence be made safe. Having vol-

untarily accepted the place occupied by him, he cannot hold the master liable for injuries received by him because the place was not safe." *Little Rock, M. R. & T. Ry.* v. *Leverett*, 48 Ark. 346; *Davis* v. *Ry.* 53 Ark. 117; *Fones* v. *Phillips*, 39 Ark, 17; *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572; *Sullivan* v. *India Mfg. Co.* 113 Mass. 396. This doctrine seems to accord with sound reason and principle, as well as with the weight of the adjudications on this question, and we see no reason to justify a departure from it.

It is shown by the evidence of the plaintiff (the appellee) that he was perfectly familiar with the employment he engaged in; that he had much experience in it, and knew the dangers incident to it; that he was a man 40 years old; and that he voluntarily entered the employment without complaint, and without any promise by the master that the place in which he was to work would be made safer. If the master was under obligation to furnish him a safer place in which to exercise his employment, he waived this obligation by accepting the employment to be exercised in the place assigned, and was not entitled to recover for injury caused by reason of the fact that the place was not as safe as reasonable care and diligence of the master could have made it.

Reversed and remanded for a new trial.

RIDDICK and WOOD, JJ., dissent.