## Ault *v.* McGaughey.

### Opinion delivered March 21, 1927.

1. MASTER AND SERVANT—NEGLIGENCE—FAILURE TO BRACE WALL.— In an action for the death of a bricklayer caused by the caving in of a dirt wall in an excavation, the issue of the master's negligence in failing to brace the wall was for the jury.

2. MASTER AND SERVANT—RELIANCE ON MASTER'S JUDGMENT.—While a servant assumes the risks and hazards ordinarily incident to his work, he has a right to rely upon the master's judgment unless the danger is so obvious that no ordinarily prudent person would incur it under like circumstances.

3. MASTER AND SERVANT—SAFE PLACE TO WORK.—A master is under duty to use ordinary care to provide a reasonably safe place for the servant to work.

4. MASTER AND SERVANT—QUESTIONS FOR JURY.—In an action for death of a bricklayer caused by the caving-in of an unbraced dirt wall in an excavation, where he was instructed to lay brick, the issues of contributory negligence and assumed risk *held* under the evidence to be for the jury.

5. MASTER AND SERVANT—SAFE PLACE TO WORK.—In an action for negligence in causing the death of a bricklayer caused by the caving-in of an unbraced dirt wall in an excavation, the master was required to use due care to provide a safe place to work, notwithstanding the hazards and dangers changed during the progress of construction.

6. MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE—INSTRUCTIONS.—In an action for negligently causing the death of a bricklayer by failing to brace a dirt wall, an instruction that the defendants were under duty to use such care as ordinarily prudent builders would have used under the circumstances, and, if prudent builders would have braced the earth wall, then it was defendants' duty to do so, *held* not abstract.

7. TRIAL—OBJECTION TO PART OF STATEMENT.—In an action against a master for death of a servant, testimony of the widow as to what the deceased and his mother had told her as to deceased's age was not erroneously admitted, where defendant's objection was only as to admission of what deceased had told his wife.

8. EVIDENCE—HEARSAY—AGE.—The date of a person's birth may be testified to by members of his family, although they may know of the fact only by hearsay founded on family tradition.

9. EVIDENCE—DIAGRAM.—In an action for death of a servant caused by a cave-in of an unbraced dirt wall, the admission of a diagram sufficiently identified was not prejudicial.

10. DEATH—DAMAGES TO DECEASED'S MOTHER—EVIDENCE.—In an action for death, it was not error to admit in evidence checks to corroborate his mother's testimony that her son had contributed to her support, as tending to prove the extent of her loss.

11. DEATH—CONSCIOUS PAIN AND SUFFERING.—In an action for a wrongful death of a laborer from the caving-in of a dirt wall, proof that there were three successive slides which gradually smothered deceased, *held* to sustain a finding of $1,500 for the benefit of his estate.

Appeal from Garland Circuit Court; *Earl Witt*, Judge; affirmed.

*Martin, Wootton & Martin, T. D. Wynne* and *Chas. A. Miller,* for appellant.

*Witt & Witt* and *Murphy & Wood,* for appellee.

MEHAFFY, J. The appellee, plaintiff below, as administratrix of the estate of T. L. McGaughey, deceased, filed suit in the Garland Circuit Court against the appellants, who were defendants below, alleging that the defendants, W. F. Ault and C. H. Burden, were partners doing a general contracting business in the State of Arkansas, and that deceased, T. L. McGaughey, was a bricklayer, and, on the 14th day of March, 1924, was working in the employ of the defendants, engaged in laying bricks in the construction of a building on Main Street, in Little Rock, and that the defendants were in charge of the construction of said building, and, in the construction, excavated a basement about 14 feet below the street level, and started the walls of the said building about fourteen feet below the street level; that said building was being constructed adjoining a three-story brick building on the corner of 5th and Main Streets, known as the Hegarty building; that the Hegarty building had no basement, and that it was necessary, in the construction of the building, for defendants to excavate under the south wall of the Hegarty building and to construct a wall 14 feet high under said Hegarty wall; that defendants had excavated a section under the Hegarty wall about 8 feet in length and to a depth of about 14 feet, and had underpinned the wall for the purpose of foundation under said wall, and that plaintiffs' intestate was ordered by the foreman in charge to begin constructing the footings for the wall under the Hegarty wall, and that, under the direction of the foreman, he began laying bricks for the footing of said wall; that it was the duty of the defendants to make the place reasonably safe, and that defendants should have had the dirt wall under the Hegarty wall braced so that it would not cave or slide, and, if they had had proper regard for the safety of their employees, they would have braced the dirt wall to prevent caving, alleging that they negligently failed to brace

the wall or to protect it from sliding; that deceased was not aware of the danger, and obeyed the command of his superior, and began to lay bricks, and that, while he was so engaged, the wall caved in on him and completely covered him and crushed him to death. There were three distinct slides of dirt; the first covered him to his waist line, the second to his shoulders, and the third covered his entire body and smothered him to death. The first and second slides crushed and bruised his body and caused him to suffer great and excruciating pain of body and mind, and that the third slide also caused him to suffer until he died.

Plaintiffs prayed judgment for the sum of $25,000. Mrs. Ella Wallace, mother of deceased, filed a complaint, and alleged that deceased contributed to her support, and would have continued to do so had he lived, and asked judgment for $8,035.

The defendants answered, denying all the allegations of negligence contained in the complaints, and denied that it was their duty to make the place safe, and denied that it was their duty to have the wall braced so that it would not slide, and they denied that the deceased did not know of the dangers; alleged that the slide was one continuous act, and that death was instantaneous. Defendants also alleged that they were not guilty of any negligence, and that there was nothing to indicate to the defendants that a slide would occur or that there was any danger; alleged that they took all the necessary precautions to prevent injury, and that plaintiffs' intestate's death was due to a risk that he assumed. They also pleaded contributory negligence and negligence of fellow-servant.

The trial resulted in a verdict in the sum of $3,000 for the mother, $8,000 in favor of the widow, and $1,500 for the benefit of the estate, making a total of $12,500. The defendants filed motion for a new trial, which motion was by the court overruled, and exceptions saved by defendants, and appeal prayed and granted.

Dorothy McGaughey testified that she was the widow of the deceased, that he was a bricklayer, earning $12 a day, and that he spent very little on himself; that he made about $250 a month, and that she got the benefit of about $150 of it; that deceased was in good health, a strong man, and never lost a day. Deceased was 27 years of age. She testified that she was the administratrix of the estate, and stated that her deceased husband and his mother told her that deceased was 27 years old.

A clerk of the probate court of Garland County testified as to the issuing of letters of administration to plaintiff.

Fred J. Hayes testified that plaintiff was his stepdaughter; that, when they got the news of her husband's death, he came to Little Rock, saw the excavation, and the dirt was sticky, muddy clay, and that the cave-in was by a big opening or window. It was open, and had no cover. He said he looked into the room adjoining the cave-in and could see old barrels and an ice-box that weighed a ton or more; saw no shoring or bracing against the earth. Witness reached Little Rock about 11 o'clock, went to the undertaker first, and then, in about 20 minutes, went to the scene of the accident; came back to Little Rock again Tuesday. Cleveland Smith testified, for the plaintiff, that he was city engineer of Hot Springs, and went to Little Rock and made an inspection of the Hegarty building and surroundings.

The room at the southeast corner adjoining the Back building is about 12 or 15 feet wide and about 50 or 60 feet long, has no floor; the window was in the extreme end of the open room in the southeast corner of the Hegarty building. A diagram was made and introduced in evidence, over the objection of the defendants. Witness testified that he had had quite a bit of experience in making excavations, but never had any engineering for the construction of buildings or excavating of basements; observed the kind and character of earth in Little Rock,

but did not know the exact nature of the soil at the Back building; that he made his observation and made the diagram for the purpose of this suit.

Frank J. Dove, a contractor of Little Rock, testified that he had an excavating machine that they used in excavating work for other contractors. The principal excavating work had been for the Donaghey building and clearing the lot where the Lafayette Hotel was built. He observed the excavating at the Back building; that the formation was clay and gravel, and nearer the bottom it was more of a sandy formation; that the earth was likely to cave or slide in a perpendicular excavation; that it did cave in the Donaghey Building. He had been following engineering since 1906. They prevented cavings by bracing the walls with lumber or jacks. On cross-examination witness said they did not do any building, but they had excavated for building; that they had. a cave-in at the Donaghey building; had happened the next morning after a rain. The reputation of Ault & Burden is good. He testified that they braced the earth in sewer ditches, and that the Back building would not have caved if it had been braced.

H. S. Cole testified as to the weather conditions at the time of the accident, as to rainfall and the direction and velocity of the wind.

L. P. Whitlock testified that he had observed the excavating prior to the time of the accident; that they had dug out the wall under the Hegarty building, and that it had no braces. The material removed was clay, gravel and sand. The excavation was about 15 feet deep, and the construction of the wall was being done under the brick wall. There were no braces under it; that he did not see any braces against the earth before the accident; that he saw that the work was dangerous.

Other witnesses testified as to the condition of the soil and the manner of excavating and constructing the wall. John R. Hughes, a plumber, testified that he remembered the accident, and looked over the condition of the building where the Hegarty drug building was,

and that the sewer slid in with the cave-in. He testified that the sewer had been torn out, and that the earth was wet from the rain the night before; that the sewer went out with the cave-in. He did not think that the sewer kept it in a saturated condition, but the rain did it; that he had every reason to believe that the sewer was all right until the rain came; that there had been no leak in the sewer; if there had been, the earth would have been stained, but it was not stained; that there was nothing wrong with the plumbing before the accident.

Other witnesses testified about the excavation and plumbing. Frank Symmers, another bricklayer, working on the same job with McGaughey when he was killed, said they were laying bricks about 4 feet apart, underpinning the building by pier. They were, at the time, working about 13 feet from the top, and were down below the main part of the excavation. They built the foundations in sections, each one approximately 8 feet wide. The accident occurred about a quarter of nine in the morning, after they had been working three-quarters of an hour. It was the first time they had been working in that span. He said: "We had been working in the section about five minutes; don't know exactly how the slide happened; it hit me across the shoulders as I was stooping. When I got up, deceased was buried half way up to his knees. He hollered for one of the laborers to help him out, and that was the last I saw of him. The second slide came, and they got me uncovered. I don't know the cause of it, or anything. There was just a moment between the first and second slides. After the second slide, then a third slide. I had my hands up when the second slide came, and they saw the tips of my fingers above the dirt. I was about gone when they dug down to me. There was a smothering sensation, not any other pain; the earth was on top of me. Nobody in particular directed us to go down there to work; when we first went we were directed to do these footings by the superintendent on the job. No one said anything about any danger.

When the dirt covered me up, it seemed hours, but it was a very short time. The wall was not braced in any way.''

There were several other witnesses who testified, but the testimony was in substance about the same as we have set out. Mr. Copeman testified for the defendants: He lived in Pensacola, Florida; had about nine years experience as superintendent; about 18 years in the building business. ''We did this work by sections. We would take a section every 8 feet along in the 140 feet. This was done as a precaution. When we would finish one section we would move our digging crew.' My attention was on the job all the time; I was in the basement all day.'' Witness then testified about the formation of the earth about the place, and that they made a test about the compactness and strength to support the weight above it. ''I found no defects, not one. There was a light rain the evening before, but it did not have any influence on the dirt. I inspected the section to see if there was any evidence that a cave-in or anything might occur. There was no evidence of any defect. I did not have the wall braced. The brick walls above were braced; did not brace the earth, for the reason that I did not think it was necessary on account of the way the dirt was standing. Nothing occurred to lead us to believe that it was necessary to shore up the earth and walls. I ascertained a satisfactory cause. It was an old broken sewer. I could tell it was an old broken pipe by the joints; that, in my opinion, caused the cave-in. We did not know anything about the sewer pipe before that time. I knew nothing about it, and had no occasion to inquire.''

This witness testified at great length about the condition and the care that was taken, and several other witnesses testified for defendants, and the testimony tended to show that not only were the contractors of good reputation, but that care was exercised, and that there was nothing to indicate any danger. The plaintiff then introduced witnesses in rebuttal, but the testimony in the whole case was quite lengthy, and we think we have set out enough to show the substance of the testimony on the real issues of the case.

The appellant's first contention is that its peremptory instruction should have been given by the court, and they say that plaintiffs' theory that the wall should have been shored or braced was not only impracticable, but impossible; but the testimony in the witnesses for the plaintiff tends to show not only that the dirt wall could have been braced, but that it should have been done in order to make the place reasonably safe. It is true that, when an employee enters the service of his employer, he assumes all of the risks ordinarily incident to the business. This court has many times held that he assumes all the risk and hazard ordinarily incident to the business, and, of course, whether the risk was usual or ordinary or not, if it were obvious, or plaintiff knew of the danger, this would be a complete defense. But this court has said: "The servant has a right to rely on the judgment of the master, unless the danger is so obvious that no prudent man would incur it under like circumstances." *Choctaw, Okla. & G. R. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244, 4 L. R. A. N. S. 837, 7 Ann. Cas. 430.

The appellant, however, argues in this case that its peremptory instruction should have been given because the circumstances were such that even ·the defendants themselves had no opportunity of knowing, and that there was nothing to put them upon inquiry. And in support of their contention they quote as follows from Labatt on Master & Servant: "It is not negligence to fail to provide against an accident of such a nature that nobody could have foreseen it and that no prudence could have anticipated the need of guarding against it. After an accident has occurred, it is easy to see what may have prevented it; but that itself does not prove or tend to prove that reasonable or ordinary care would have anticipated or guarded against it."

Appellants cite many other cases to the same effect, and, if the proof showed that the injury was caused by an accident, or that the accident was of such a nature that no one could have foreseen it and that no prudence could have anticipated the need of guarding against it, then,

of course, it would not be negligence. However, we think that there is ample proof on the question of the negligence of the employer to make it a question for the jury. Witnesses testified that the earth was not braced in any way, and one witness testified that he had every reason to believe that the sewer was all right until the cave-in came, and that, from the condition of the ground, he would judge that there was no leak in the sewer before that time. Other witnesses testified that there was no brace at all, and it would not be safe to excavate under a brick wall three stories high, for the distance that they excavated under the Hegarty building, without bracing the earth. Witnesses who were competent to testify on the subject state that the earth was not braced, and that it was dangerous without being braced.

Without quoting all the testimony, it may be said that, while there was some conflict in the testimony, yet there was ample testimony, we think, to submit the question to the jury for its determination as to whether the appellant was guilty of negligence in its failure to brace the wall.

It was, of course, the duty of the employer to use ordinary care to provide a reasonably safe place for the employee to work. And whether the employer did this or not was a question of fact for the jury, as was also the question of assumed risk and contributory negligence.

Appellant's next contention is that instruction number one, given on behalf of plaintiff, was erroneous. Their contention is that this instruction is abstract, that it is equally applicable to any state of facts relating to master and servant. That, of course, may also be said of an instruction to the jury defining negligence. The instruction complained of is as follows: "It was the duty of the defendants to exercise ordinary care to furnish their servants a reasonably safe place in which to work and to make reasonable inspection from time to time to see that the place was kept safe. The degree of care required of defendants should be tested by the circumstances surrounding the character of the employment and the par-

ticular facts of the case, and, if you believe from a preponderance or greater weight of evidence that defendants failed to use such care, and the death of T. L. McGaughey resulted from such negligence, your verdict should be for the plaintiff.''

This court has many times passed on instructions similar to the one under discussion, and has held that such instructions were properly given. The instruction is given in the case of the *Central Coal & Coke Co.* v. *Barnes,* 149 Ark. 533, 233 S. W. 833; *Wisconsin & Arkansas Lumber Co.* v. *Standridge,* 132 Ark. 535, 201 S. W. 295.

The appellant contends that the instruction was not applicable, because the work itself constantly changed— as it progressed, the hazards and dangers increased or diminished as the work proceeded. We think that in this particular case the dangers or hazards did not increase or diminish as the work progressed in the sense contended for by the appellant. The testimony of the witnesses showed that it should have been braced; that that was the duty of the master; if it had been braced, there would have been no danger, and the hazard would not have increased or diminished as the work progressed. It is true that there may be many places that could not be made safe at all, but here the jury was told that it was the duty of the master to exercise ordinary care to furnish a reasonably safe place. Some witnesses have testified that the wall should have been braced, that it was unsafe to work there without the wall being braced, and that braces would have made it safe. And we conclude that there was no error in giving instruction number one.

Appellant next complains that the court gave instruction number two, but they simply state that the objections to this instruction are the same as the objection to number one, that it is purely abstract. It is unnecesary to set out instruction number two in full, but it simply told the jury that it was the duty of the defendants to use such care, skill and foresight as ordinarily prudent builders would have used under the circumstances, and

that, if they believe from a preponderance of the evidence that a builder of ordinary skill and prudence would have braced the earth, then it was defendant's duty to do so, and if they find that the defendant failed, and, on account of such failure, deceased was killed, the verdict would be for the plaintiff. We see no objections to instruction number two, and number three is objected to because appellants claim it is abstract and argumentative, involved, and misleading.

In fact, the appellant complains about the instruction above named, as well as number five, as being abstract, and also objects to number five because it is stated that it excludes from the consideration of the jury the defense of assumed risk. We think, however, that, when the instructions are considered as a whole, they clearly state the law applicable to the case, and it would serve no useful purpose to set them out at length.

Appellants also object to certain testimony admitted by the trial court. Among other things they object to the testimony of the plaintiff in stating the age of her deceased husband. She was asked how she knew the age of her husband, and answered, "He told me how old he was, and his mother told me." Objection was made to this answer, as it was a statement made to the administratrix of the estate by the deceased, but the answer included the statement that his mother told her, which was not asked to be excluded, and the appellant did not ask that that portion of the answer that her husband's mother told her be excluded. Hearsay evidence as to age may be the best evidence that can be had. At any rate, it is usually admissible. "Another required exception to the hearsay rule relates to family tradition or pedigree. Such evidence is admitted because it is the best the nature of the case admits, and because greater evils are apprehended by rejection of such evidence than from its admission. The law has relaxed general rules and allowed the exception. * * * And so the date of a person's birth may be testified to by members of his

family, although they may know of the fact only by hearsay founded on family tradition." 10 R. C. L., 963.

While the hearsay rule is well established, yet there are many exceptions. ''Proof of the age of a person may generally be made by the testimony of a relative or other person who is in such position to have personal knowledge of such age. But the date of a person's birth may also be testified to by members of his family; though they know the fact only by hearsay, based on family tradition.'' 3 Jones on Evidence, 2015.

In addition to the testimony objected to, the mother of the deceased, Mrs. Wallace, testified that he was born September 14, 1897, and there is no objection urged to this, and there is really no dispute about his age.

Appellant also urges that the court erred in permitting witness Cleveland Smith to introduce in evidence a diagram prepared by the witness. We do not think there was any error in admitting this diagram. We think it was sufficiently identified, and its introduction was not prejudicial.

It is also contended that the court erred in permitting Ella Wallace, mother of deceased, to introduce in evidence certain checks. The only purpose of introducing the checks was to corroborate the testimony of Mrs. Wallace that her son contributed to her support, and we do not think there was any error in admitting them.

Appellant also insists that there was no proof that the deceased suffered any conscious pain, and therefore nothing can be recovered for the estate. There is evidence that there were three slides, and that the first came up to his knees, and he called for help. The next slide came up to his waist, and the third covered him up and smothered him. The laborer who was working with him was also covered, but had raised his hands so that his fingers extended above the dirt. Of course, no one can tell what his pain and anguish was from the time the dirt caved in till his death. We can only imagine how awful it must have been. In deciding a case where one was thrown into the water and drowned, this court

said: "Under the circumstances the finding that the pain and suffering were not merely incidental to the death, and that death from the injury was not instantaneous, is fully sustained. No one can conceive what awful agonies must have been endured by Ruff if he was conscious that death would be the inevitable result of his falling into the lake. The jury were justified in concluding that Ruff, during the fall and after he struck the water, was conscious, and from that time until his death he endured pain." *St. L. I. M. & S. R. Co.* v. *Robertson,* 103 Ark. 361, 146 S. W. 482. We think the jury were justified in this case in finding $1,500 for the estate.

The case was properly submitted to the jury, and the evidence is sufficient to support the verdict. Judgment is affirmed.