Owosso MANUFACTURING COMPANY *v.* DRENNAN.

Opinion delivered October 13, 1930.

*Buzbee, Pugh & Harrison,* for appellant.

*Quinn Glover* and *Tom W. Campbell,* for appellee.

MEHAFFY, J. The appellant, Owosso Manufacturing Company, is a corporation engaged in the manufacture and sale of lumber and other wood products, with its

plant and principal place of business located at Benton, Saline County, Arkansas. In connection with its manufacturing plant, it operates a veneer mill. Adjacent to the veneer department is a log yard, where gum logs and other hardwood logs are unloaded from flat cars and stacked on the yards preparatory to being tansferred to a concrete vat, containing a hot solution in which the logs are soaked before they are worked up into veneer material. The walls of the vat are something like 2½ feet above the level of the ground. The logs are handled by means of a stationary derrick with a swinging boom or hoist from which a wire cable equipped with tongs for hooking logs is suspended. The logs are brought to the mill on cars and unloaded from the cars by means of the derrick and placed on the mill yard in stacks about 15 feet high and 40 or 50 feet long. In transferring the logs to the vat the tongs are hooked into each end of the log, the log is picked up by the hoist and deposited in the vat, and the tongs are then released. One man operates the hoist by means of steam power, another man hooks the tongs into the logs and another man releases the tongs when the log is put into the vat.

Appellee's intestate, J. J. Drennan, at the time of his injury and death, was employed by appellant as a tong hooker. His duties were to hook the tongs into the logs, and this required his being on and about the log pile going from one side of the pile to the other, for the purpose of hooking the tongs into each end of the log. On the 5th day of December, 1929, Drennan was engaged in his duties hooking tongs into logs, and, while standing on the ground, between the log pile and the concrete vat, where he had gone to get hold of the tongs to fasten them into a log, in the performance of his duty, he was crushed by a heavy log rolling down from the stack and pinning him against the vat. An employee named Mason was working with Drennan, Mason's duties being to unhook the tongs from the logs after they had been put into the vat. The regular way that Drennan and Mason had been accus-

tomed to take the logs from the stack and put them in the vat was to take the logs from the top of the stack first and gradually work down to the bottom. On the morning Drennan was injured, his foreman, Meyers, told Drennan and Mason to clean up the logs along the vat, to clean that up and get that back out of the way, make a passageway next to the vat. The logs were piled down against the vat wall, so that there was no passage between the vat and the pile of logs, and Meyers, the foreman, directed them to make a passageway next to the vat, between the vat and the stack of logs; he told them to clear up the logs next to the vat. While Drennan and Mason were engaged in obedience to the orders of the foreman, Meyers, and had taken up five or six logs right next to the vat, as the foreman had told them to do; they had taken the logs next to the vat on the ground so there was a space on the ground to walk between the stack of logs and the vat, and the logs fell on Drennan, crushed him and killed him. The log pinned him to the vat, and then a second log rolled down and struck him across the head and shoulders. When the first log struck him, he only halloed "Oh," as the second log rolled down on him, he crumpled over the first log and threw up his hands, and the second log crushed him on the first log. This happened about five or ten minutes after Meyers had given the order to remove the logs next to the vat. After the log had fallen on Drennan, the tongs were hooked into the logs and they were raised off him. Drennan was then carried to the south side and laid down, he was alive and breathing; they put him in a car and started to town with him, and he was still alive at that time; he was alive and breathing when they met the ambulance; this was about a mile from the plant. The logs that were stacked on Wednesday before Thanksgiving were stacked crooked; they were stacking them late in the afternoon, the boss was in a hurry, wanted the cars unloaded that night and in letting them down they would do it quickly, and in that way they were piled crooked and uneven.

Drennan was 30 years of age. When Drennan was not engaged at work of this character, he farmed; he was a good worker, a good citizen and sober man; he had worked off and on for the Owosso Manufacturing Company for something like seven years; he worked part of the time each year; part of the time he hooked tongs and part of the time he was handling lumber; did various kinds of work for six or seven years. He left surviving him a widow and three small children. He supported his wife and children during his lifetime, was in good health, a man of good character, treated his wife and children well, had no expensive habits, and spent his earnings on his family. He had bought and paid for his home. His widow was 27 years old.

The appellant did not introduce any testimony in the case, and the evidence of Mason, the only person who was with Drennan at the time of his death, testified to the foreman, Meyers, giving the order and testified that at the time of his injury Drennan was engaged in the work in obedience to the orders of Meyers. Meyers did not testify, and the evidence of the order having been given and Drennan obeying it is without dispute.

The case was submitted to the jury, and a verdict of $15,000 was rendered, and judgment was entered for that amount.

This appeal is prosecuted to reverse the judgment of the circuit court.

Appellant insists that the testimony was not sufficient to support a finding of negligence against it, and that the undisputed testimony presents a clear case of assumption of risk arising from obvious working conditions and obvious dangers to which appellee's intestate voluntarily exposed himself. The case of *Emma Cottonseed Oil Co.* v. *Hale,* 56 Ark. 232, 19 S. W. 600, is cited and relied on. In that case the question of obeying the order of a superior was not involved. The court announced the general rule as to assumed risk and reversed the case because the trial court gave instructions which

this court said were ambiguous and misleading. The question involved in this case was not discussed. The next case appellant cites is the case of *C. O. & G. R. R. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244, 4 L. R. A. N. S. 837, 7 Ann. Cas. 430. In that case this court said, after discussing the general rule in England and this country: "But plaintiff in this case exposed himself to the danger in obedience to an order of the foreman. As the danger was brought about by the negligence of the foreman, before it can be said, as a matter of law, that the plaintiff assumed the risk thereof by the mere fact that he went ahead with his work, it must be shown that when he did so he knew and appreciated the danger to which he exposed himself by doing the work. But, as plaintiff was busily engaged in work which required his attention, we think it was open for the jury to say that he did not know of or fully appreciate the danger, and that therefore he did not, by continuing at work, assume the risk of injury to which he was exposed by the carelessness of the foreman. * * * The order of the foreman to push the bent over carried with it an implied assurance that the act could be done with reasonable safety, for it is the duty of the master or his representative to use due care, and not to order the servant to perform an act that he knew to be unnecessarily dangerous. The servant has the right to rely upon the judgment of the master unless the danger is so obvious that no prudent man would incur it under like circumstances."

The next case relied on by appellant is *Neimeyer Lumber Co.* v. *Watson,* 134 Ark. 491, 204 S. W. 310. That case does not discuss the question involved here. Appellant next cites and relies on the case of *Brinkley Car Works & Mfg. Co.* v. *Lewis,* 68 Ark. 316, 57 S. W. 1108. That case does not discuss the question of a servant acting in obedience to the order of a superior. The case of *Ark. Cotton Oil Co.* v. *Carr,* 89 Ark. 50, 115 S. W. 925, does not discuss the question of acting in obedience to an order of a superior. The court there held that there

was no evidence of the negligence of the master, and that the servant under the facts in that case assumed the risk. The case of *Francis* v. *Arkadelphia Milling Co.*, 153 Ark. 236, 239 S. W. 1067, is cited by appellant, but that case does not discuss the questions here involved. There was no question of acting under orders of a superior, but the court simply announced the general rule of assumption of risk.

Appellant says that the case of *Temple Cotton Oil Co.* v. *Skinner*, 176 Ark. 17, 2 S. W. (2d) 676, is not in conflict with its contention in this case. In the Skinner case the court discussed the cases of *Ark. Cotton Oil Co.* v. *Carr* and *Francis* v. *Arkadelphia Milling Co.*, referred to and relied on by appellant and numerous other cases, and held that the trial court in the Skinner case properly left the question of assumption of risk to the jury as a matter of fact to be determined by it. There was no question in the Skinner case of a servant acting under the order of the master.

Appellant next calls attention to the case of *Ark. Short Leaf Lbr. Co.* v. *Lattimore*, 158 Ark. 308, 250 S. W. 28. The judgment in that case was affirmed by this court, and the court in discussing the instruction said: "We do not think the instruction was erroneous. It submitted to the jury the question of the negligence of the defendant in directing the plaintiff to work in the fuel room with light from a lantern instead of from electricity." In the recent case of *Ward Furniture Mfg. Co.* v. *Weigand*, 173 Ark. 762, 293 S. W. 1002, cited by appellant, we did not discuss the question of the servant acting in obedience to the master's order. That question was not involved.

The law is well settled in this State that when an employee enters the service of his employer, he assumes all of the risk ordinarily incident to the business. He assumes all the risk and hazard ordinarily incident to the business, and whether the risk was usual or ordinary or not, if it were obvious or plaintiff knew of and appreciated the danger, he would assume the risk. This court

has many times announced this doctrine, and it is well settled in this State, but it is thoroughly well settled also that an employee does not assume the risk or hazard caused by the negligence of the master. The servant has a right to rely on the judgment of the master unless the danger is so obvious that no prudent man would incur it under like circumstances. *C. O. & G. R. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244; *Ault* v. *McGaughey,* 173 Ark. 322, 292 S. W. 359.

One of the first duties of the servant is obedience. "It is a fundamental of the relation of master and servant that the servant shall yield obedience to the master, and this obedience an employee may properly accord even when confronted with perils that otherwise should be avoided. In any case, but more plainly when a command is sudden and there is little or no time for reflection and deliberation, the employee may not set up his judgment against that of his recognized superiors; on the contrary, he may rely upon their advice, assurances and commands, notwithstanding many misgivings of his own. It by no means follows that because he could justify disobedience of the order he is barred of recovery for injuries received in obeying. He is not required to balance the degree of danger and decide whether it is safe for him to act, but he is relieved in a measure of the usual obligation of exercising vigilance to detect and avoid danger. Ordinarily, he may assume that the employer has superior knowledge and rely thereon, especially when the act is one that could be made safe by the exercise of special care on the part of the employer. The employee may assume that such care will be taken. Again, it is a psychological truth that employees form a habit of obedience that overcomes independent thought and action, depriving them of power to exercise intelligence that otherwise would protect them." 18 R. C. L. 655, *et seq.*

According to the evidence in this case, Drennan, the deceased, had been working for the Owosso Manufactur-

ing Company part of the time each year for about seven years. During that time, he was of course required to obey the orders of the master, and, as said by many authorities, formed the habit which overcame the independent thought and action, and therefore when the foreman ordered him to clear the passageway and take the logs out next to the vat, he evidently did it without hesitation, relying on the superior knowledge of his master. He might have known it was dangerous, he probably did know it, but the master had told him to do it that way, and he had a right to obey the order of the master and to rely on the judgment of the master, unless the danger was so obvious that no prudent man would incur it under like circumstances.

"He obeyed that instinctive impulse to follow the direction of his superior which is the characteristic of a faithful, resolute and loyal servant, and his conduct is entitled to be viewed in the light of reasonable charity." *Sawyer* v. *Rumford Falls Paper Co.*, 90 Me. 354, 38 Atl. 318, 60 A. S. R. 260.

No case decided by this court, so far as we know, has expressed a view contrary to these decisions, and, while the servant assumes the ordinary risk of his employment, he has the right and it is his duty to obey the orders of his superior unless the danger is so obvious that no prudent man would obey them.

"While there may be cases disclosing such manifest danger to the employee that the court may direct a non-suit or a verdict for the employer, it generally is held to be for the jury to say whether the employee in acting pursuant to orders or assurances, knew and appreciated the peril. The tendency of the modern cases is to permit a recovery unless the employer's direction calls for nothing less than recklessness on the part of employee, leaving no ground for difference of opinion as to the peril of acting pursuant thereto." 18 R. C. L. 659.

The question whether a servant doing a thing in obedience to orders of his superior assumes the risk is a

question for the jury unless the danger is so apparent that a prudent man under the circumstances would not obey the order. In this case we think it was a question for the jury. The order was given. About that there is no dispute, it is not denied by appellant.

The appellant next insists that the court erred in giving and refusing instructions. We have carefully considered all the instructions, and have reached the conclusion that the instructions as a whole correctly submitted the issues to the jury.

The issues having been submitted to the jury under proper instructions, the judgment of the circuit court is affirmed.